# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2783

_____

| | | |
|---|---|---|
| Rick Shelton, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| ContiGroup Companies, Inc., originally | * | |
| sued as Continental Grain Company, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: January 14, 2002

Filed: April 1, 2002

_____

Before WOLLMAN,[1] Chief Judge, HANSEN, Circuit Judge, and OBERDORFER,[2] District Judge.

_____

WOLLMAN, Chief Judge.

_____

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002. He has been succeeded by the Honorable David R. Hansen.

[2]The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

Rick Shelton appeals from the district court's grant of summary judgment to the defendants in his action for long-term disability benefits. We reverse and remand for further proceedings.

## I.

Shelton was employed at the Wayne Farms LLC poultry processing complex in Danville, Arkansas, beginning on May 18, 1987. Wayne Farms is a division of ContiGroup Companies, Inc. (ContiGroup), formerly known as the Continental Grain Company. While employed there, he participated in The Continental Grain Company Long-Term Disability Benefit Plan (Plan) and The Salaried Retirement Plan (which is not at issue in this appeal). Both plans are governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq., and are funded entirely by ContiGroup. The Plan's administrator is the "Administrative Committee," a group appointed by ContiGroup's Board of Directors.

Section 2.2 of the Plan defines a "Participant" in the Plan as one "whose participation in the Plan has not terminated." Section 3.3 provides that a "Participant's participation in the Plan shall terminate" on "[t]he date the Participant's employment with the Employing Company is terminated (as determined by it) other than by reason of Total Disability."

On August 28, 1987, Shelton injured his right knee while working at Wayne Farms. He received medical treatment from time to time, including having two surgeries on the knee. Ultimately, on November 13, 1996, Shelton was placed on medical leave from Wayne Farms, with medical restrictions of "no prolonged standing or walking indefinitely." He received short-term disability benefits for the prescribed period. On or about February 19, 1997, Shelton submitted an application for long-term disability benefits under the Plan. This application was received and processed by CIGNA, which had contracted with ContiGroup to process claims under the Plan.

-2-

On April 23, 1997, while CIGNA was processing Shelton's claim, two Wayne Farms employees, Danny Jones and Anita Vanravensway, went to the Plainview Dairy Bar, a diner owned and operated by Shelton's wife and her mother. Shelton was behind the counter, and when Jones and Vanravensway entered, he stood up, took their order, and accepted their payment. He then sat back down. [Shelton contends that he was not being paid wages while he was at the dairy bar and that taking Jones's and Vanravensway's order was all that he did while there.] Later that day, Jones and Vanravensway reported that they had seen Shelton working at his wife's business, whereupon Wayne Farms immediately terminated Shelton's employment. The next day, Don Bull, manager of the Wayne Farms Danville complex wrote Shelton a letter stating that Shelton had been terminated because "by working and receiving other income from Plainview Dairy Bar, you are violating your medical leave."

The same day that Shelton was terminated, Joellen West, a human resources employee at the corporate offices of ContiGroup's poultry group, sent an intracompany e-mail to ContiGroup Benefits Administrator Frances Pages informing her that Wayne Farms had fired Shelton and stating that she should stop processing his application for long-term disability benefits. The Plan then notified CIGNA to stop processing Shelton's application.

The Administrative Committee did not provide Shelton with written notice of the denial of his claim nor of his appeal rights, as required by the Plan. There is nothing in the record to indicate that the Administrative Committee made any decision regarding Shelton's claim. An affidavit by Jessie Barsin, a member of the Administrative Committee, states that Shelton's claim was not processed because "the LTD Plan was informed that he was no longer employed by Wayne Farms or ContiGroup and informed he had been working while on medical leave and drawing short-term disability benefits."

Shelton sued, claiming that he was entitled to benefits under the Plan. He did not claim that he was wrongfully terminated. The district court granted summary judgment to ContiGroup, holding that Shelton ceased being a participant in the Plan when he was terminated and thus was no longer eligible for benefits.

## II.

We review the district court's grant of summary judgment de novo. Henerey v. City of St. Charles, 200 F.3d 1128, 1131 (8th Cir. 1999). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c).

"ERISA provides a plan beneficiary with the right to judicial review of a benefits determination." Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998); see 29 U.S.C. § 1132(a). It is undisputed that the Plan gives the administrator discretionary authority to determine eligibility for benefits, so we would ordinarily review the administrator's decision for an abuse of discretion. See Woo, 144 F.3d at 1160. "This deferential standard reflects our general hesitancy to interfere with the administration of a benefits plan." Layes v. Mead Corp., 132 F.3d 1246, 1250 (8th Cir. 1998). Under this standard, a reviewing court should consider only the evidence before the plan administrator when the claim was denied. Id. at 1251. We may apply a less deferential standard of review if the plaintiff presents "material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty" to the plaintiff. Woo, 144 F.3d at 1160. An alleged conflict or procedural irregularity must have some connection to the substantive decision reached. Id. at 1161. A claimant must offer evidence that "gives rise to serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim" for us to apply the less deferential standard. Layes, 132 F.3d at 1250 (internal quotation marks omitted).

-4-

Shelton argues that the district court should have applied a less deferential standard of review to the administrator's decision because of the conflict of interest created by ContiGroup's both funding and administering the Plan and because of the procedural irregularities that occurred in the processing of his claim. It appears from the record, however, that Shelton did not ask the district court to apply a less deferential standard. Normally, we do not consider arguments first raised on appeal. See Colonial Ins. Co. of Cal. v. Spirco Envtl., Inc., 137 F.3d 560, 561 (8th Cir. 1998). We need not determine whether a less deferential standard should be applied in this case, however, because we conclude that the administrator abused its discretion by allowing company officials to make a decision that the Plan reserves to the Administrative Committee.

In determining whether the administrator's decision constituted an abuse of discretion, we apply five factors: (1) whether the administrator's interpretation is consistent with the goals of the Plan; (2) whether the interpretation renders any language in the Plan meaningless or internally inconsistent; (3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the administrator has interpreted the relevant terms consistently; and (5) whether the interpretation is contrary to the clear language of the Plan. Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997).

We conclude that in deciding that Shelton was no longer a participant in the Plan because he was no longer a ContiGroup employee, the administrator failed to give effect to the requirements of the Plan in their entirety.

Section 2.18 of the Plan provides:

"Totally Disabled" or "Total Disability" shall mean, (a) during the first 30 months of any period of continuous disability requiring the

regular care of a licensed physician, that the Participant is unable, because of accidental bodily injury or sickness (whether occupational or non-occupational), to perform any and every duty of his occupation with the Employing Companies and is not gainfully employed in any other occupation; and thereafter, during the remainder of such continuous period of disability, that the Participant is unable, because of the same accidental bodily injury or sickness, to engage in any gainful occupation or profession for which he is reasonably fitted by education, training or experience, and is not gainfully employed. All determinations as to whether or not a Participant is or continues to be Totally Disabled shall be made by the Administrative Committee.

Section 2.18 contains two standards for the definition of "Total Disability:" (1) that the claimant cannot engage in gainful employment and (2) that the claimant is not in fact gainfully employed. The final clause of the section states that only the Administrative Committee may make a determination of a claimant's eligibility under these standards. When it fired Shelton for working at the Plainview Dairy Bar, ContiGroup in essence made a determination under this provision that he was gainfully employed and so was not "Totally Disabled" under the Plan. If ContiGroup were allowed to fire a claimant for being otherwise gainfully employed, the final clause of section 2.18 would be rendered meaningless, for under ContiGroup's interpretation of the Plan, ContiGroup employees are empowered to make decisions regarding a claimant's eligibility under the definition of "Total Disability" set forth in section 2.18 by terminating the claimant and thus rendering the claim moot.

As indicated earlier, section 3.3.1 states that an employee's participation in the Plan ends when the employer terminates that employee, other than for total disability. Read in isolation, this provision prevents ContiGroup from removing an employee from the Plan for being disabled but allows ContiGroup to remove an employee for not being disabled. The Plan should not be read in a manner that would render nugatory the requirement that the Administrative Committee determine whether a claimant is gainfully employed at the time the determination of the claimant's

eligibility for long-term disability benefits is being made. In other words, once a claim for long-term disability benefits is filed, the Administrative Committee is the only body with the authority to make that determination. By failing to make that determination, the Administrative Committee abdicated its duty imposed upon it by section 2.18 and perforce abused is discretion.

We are not saying, as Shelton would have us do, that employers may not fire any at-will employee who has filed a long-term disability claim. Our holding is limited to the provisions of ContiGroup's Plan, which provides that certain decisions are committed to the Administrative Committee, including the determination regarding a claimant's ability to work and whether or not the claimant is in fact working. By filing a claim, Shelton was entitled to have those decisions made only by the Administrative Committee.

Because the Administrative Committee's failure to fulfill its duty constituted an abuse of discretion, ContiGroup was not entitled to summary judgment. Accordingly, on remand the district court should remand the case to the Administrative Committee for a decision on the merits of Shelton's claim, including a determination of whether, as he contends, Shelton was not in fact gainfully employed at the dairy bar on April 23, 1997.

The judgment is reversed, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.