# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2959

_____

Stephen C. Orr,

       Appellant,

v.

Wal-Mart Stores, Inc.,

       Appellee.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of Nebraska.

_____

Submitted:  April 19, 2002

Filed:  July 22, 2002

_____

Before BOWMAN, LAY, and RILEY, Circuit Judges.

RILEY, Circuit Judge.

Stephen Orr (Orr) filed a law suit against Wal-Mart Stores, Inc. (Wal-Mart) alleging violations of the Americans with Disabilities Act (ADA) and the Nebraska Fair Employment Practices Act (NFEPA).  Concluding Orr failed to show he was disabled under either the ADA or the NFEPA, the district court[1] granted summary judgment in favor of Wal-Mart.  Orr appeals.  We affirm.

_____

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

## I.  BACKGROUND

Stephen Orr is a pharmacist licensed in Nebraska, Wyoming, and South Dakota.  In 1986, Orr was diagnosed with diabetes.  To control his diabetes, Orr uses a glucometer to monitor his blood glucose levels, takes insulin, and eats a special diet within thirty minutes of taking insulin.  During the time relevant to this lawsuit, Orr injected insulin three times each day – in early morning, at noon, and before bedtime.  Orr controls his disease to the best of his ability. When his diabetes is not well controlled, he suffers from vision impairment, low energy, lack of concentration and mental awareness, lack of physical strength and coordination, slurred speech, difficulties typing and reading, and slowed performance.

In January 1998, Orr became employed full time as a pharmacist at a Wal-Mart store in Chadron, Nebraska.  This Chadron store was a single-pharmacist Wal-Mart facility, and Orr was the only pharmacist on duty during his work day.  Before accepting employment, Orr informed Wal-Mart District Manager Rick Coleman (Coleman) he was an insulin-dependent diabetic.  Coleman authorized Orr to take a lunch break and mid-day breaks during his ten-hour work shift.  Orr understood Coleman to authorize him to take an uninterrupted lunch break, and Orr routinely closed the pharmacy for thirty minutes over the noon hour to eat lunch.

John Foss (Foss) succeeded Coleman as district manager in charge of the Chadron store.  Foss informed Orr that Wal-Mart policy[2] required the pharmacy to

---

[2]The applicable part of the Wal-Mart Breaks/Lunch Period policy stated:

In pharmacies with one pharmacist on duty, the pharmacist cannot leave the pharmacy area unsupervised for any regular length of time for breaks or lunch periods.  Therefore, the pharmacist will take time between busy periods for a break or eating lunch **in** the pharmacy prescription area.

(emphasis in original).

remain open during store hours and instructed Orr not to close the pharmacy during his lunch break. Orr did not comply with Wal-Mart policy and continued to close the pharmacy for thirty minutes in order to take an uninterrupted lunch. On March 5, 1998, Foss issued Orr a written warning for closing the pharmacy. The written warning stated that further non-compliance would result in Orr's termination.

Orr responded in writing to the warning with his "action plan" and without mentioning his diabetes.

> Per this presentation & our discussion of the issues a[t] hand. I respectfully protest this presentation & Decision-Making Day. My understanding of time off for lunch & breaks apparently was a misunderstanding of company policy as presented by Rick Coleman. My leaving the Pharmacy on 2/25 was specifically for company (Pharmacy) business to pick up a CII Rx at the Clinic.
>
> I will from this date forward take my lunch break within the confines of the Pharmacy & maintain the opening of the Pharmacy from 9-7AM Mon.-Fri & 9-6 on Sat during my scheduled days shift.

Orr initially abided by Wal-Mart's policy and kept the pharmacy continuously open during store hours. However, a week after receiving the written warning, Orr wrote to Foss requesting he rescind the written warning based on Orr's original understanding and agreement with Coleman. Orr stated, in part: "I had discussed with Rick Coleman during the interview process conducted at Wal-Mart in Rapid City, that I was an Insulin Dependent Diabetic. Rick Coleman agreed that I could take lunch breaks." On April 8, 1998, after receiving no response, Orr wrote to Foss again asking him to remove the written warning from Orr's personnel file. In his second letter, Orr informed Foss that, due to his adherence to Wal-Mart policy requiring the pharmacy to remain open, he was unable to eat until "much after noon, resulting in my experiencing symptoms of hypoglycemia." Orr expressed concern

that not having an uninterrupted lunch break could adversely affect the control of his diabetes.

On April 17, 1998, Foss wrote to Orr and advised him that the written warning would not be rescinded. Foss said he had discussed the situation with higher management. Foss's letter informed Orr that Coleman denied ever authorizing Orr to close the pharmacy to take a lunch break. In his letter Foss also explained that Wal-Mart had always permitted Orr to control his diabetes by bringing food into the pharmacy, providing access to a refrigerator, and allowing him to eat or snack in the pharmacy.

On April 24, 1998, Orr wrote Foss and again asked him to rescind the written warning. Orr's letter relayed to Foss that working in the pharmacy without an uninterrupted daily lunch break was adversely affecting the control of his diabetes. On May 7, 1998, Orr wrote another letter to Foss, informing him that, as a result of the no lunch break policy, Orr had incurred "several low, hypoglycemic incidents." Orr expressed his disappointment with Wal-Mart's indifference to his needs as a diabetic, and Orr informed Foss he was resuming noon lunch breaks away from the pharmacy for the maintenance of his diabetic health. Thereafter, Foss terminated Orr.

## II.    DISCUSSION

Orr argues the district court erred in finding he was not disabled within the meaning of the ADA. Under the ADA, a disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A).

The disability discrimination provisions in the NFEPA are patterned after the ADA, and the statutory definitions of "disability" and "qualified individual with a disability" contained in the NFEPA are virtually identical to the definitions of the ADA. See Neb. Rev. Stat. Ann. § 48-1102(9) & (10); 42 U.S.C. §§ 12102(2),

12111(8). In construing the NFEPA, Nebraska courts have looked to federal decisions, because the NFEPA is patterned after Title VII and the ADA. See, e.g., Father Flanagan's Boys' Home v. Agnew, 590 N.W.2d 688, 693 (Neb. 1999); IBP, Inc. v. Sands, 563 N.W.2d 353, 357-59 (Neb. 1997). We therefore employ the same analysis to determine whether Orr's diabetes constitutes a disability under both the ADA and the NFEPA.

In Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999), the Supreme Court held that the threshold inquiry whether an individual is disabled is analyzed on an individualized basis. The Court concluded that a diabetic is not per se disabled but must demonstrate his condition substantially limits one or more major life activities. Id. at 482-83. The Court emphasized that "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." Id. at 482-83.

Orr claims his diabetes substantially affects his ability to see, speak, type, read, and walk. Orr also argues "it would not be unreasonable to expect that [his] diabetic condition will significantly disrupt his lifestyle." (emphasis added). Orr also contends that if he fails to properly monitor and treat his diabetes, then he "could experience" adverse symptoms which "would . . . substantially limit [his] major life activity of working." (emphasis added).

The Supreme Court in Sutton expressly ruled that "[a] 'disability' exists only where an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken." Sutton, 527 U.S. at 482 (emphasis added). Therefore, neither the district court nor we can consider what would or could occur if Orr failed to treat his diabetes or how his diabetes might develop in the future. Rather, Sutton requires that we examine Orr's present condition with reference to the mitigating measures taken, i.e., insulin injections and diet, and the actual consequences which followed. See id.

In resisting summary judgment, Orr failed to present evidence explaining either how diabetes substantially affects his major life activities or the duration and frequency of any limitations. "[M]ost disabilities from which people suffer," including diabetes, "do not have a substantial enough effect on their major life activities." Berg v. Norand Corp., 169 F.3d 1140, 1145 (8th Cir. 1999) (quoting Dalton v. Subaru-Isuzu Auto., Inc., 141 F.3d 667, 675 (7th Cir. 1998)). Health conditions that cause moderate limitations on major life activities do not constitute disabilities under the ADA. See Taylor v. Nimock's Oil Co., 214 F.3d 957, 960 (8th Cir. 2000) (heart disease); Weber v. Strippit, Inc., 186 F.3d 907, 914 (8th Cir. 1999) (heart disease). To hold otherwise could expand the ADA to recognize almost every working American as disabled to some degree.

Our review of the record establishes that Orr does not have an actual disability which presently and substantially limits a major life activity. He, therefore, is not disabled under the ADA or the NFEPA.

On appeal, Orr argues eating is a major life activity that is substantially limited due to his diabetes, and the necessity of adhering to a strict dietary regimen substantially limits the major life activity of working.[3] He urges this panel to adopt

---

[3]In Sutton, the Supreme Court assumed working is a major life activity, but questioned whether it is, noting the EEOC's reluctance to define "major life activities" to include working and its suggestion that working be considered a "residual life activity." Sutton, 527 U.S. 492 (citing 29 C.F.R. pt. 1630, App. § 1630.2(j) (1998)). More recently, the Supreme Court expressed skepticism as to whether working can be a major life activity, but did not decide the issue. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, ___, 122 S. Ct. 681, 692 (2002) ("Because of the conceptual difficulties inherent in the argument that working could be a major life activity, we have been hesitant to hold as much, and we need not decide this difficult question today."). In this circuit we have followed Sutton and Toyota in assuming, without conclusively ruling, that working constitutes a major life activity for purposes of applying the ADA. See Duty v. Norton-Alcoa Proppants, No. 01-1478, 2002 WL

the holding of a recent Seventh Circuit case that, in the context of insulin-dependent diabetes, eating constitutes a major life activity.  See Lawson v. CSX Transp., Inc., 245 F.3d 916, 923 (7th Cir. 2001).[4]  Orr did not allege in his complaint or argue in the district court that eating is a major life activity which is substantially limited because of his diabetes.[5]  Ordinarily, we do not consider an argument raised for the first time on appeal.  See Shelton v. ContiGroup Cos., 285 F.3d 640, 643 (8th Cir. 2002); Berg, 169 F.3d at 1145.  We consider a newly raised argument only if it is purely legal and requires no additional factual development, or if a manifest injustice would otherwise result.  Orion Fin. Corp. of S.D. v. Amer. Foods Group, Inc., 281 F.3d 733, 740 (8th Cir. 2002).  Orr does not persuade us that either exception applies.  We therefore decline to consider the argument on appeal.[6]

_____

1312197, at *17 n.3 (8th Cir. June 18, 2002); Kellogg v. Union Pacific R.R., 233 F.3d 1083, 1087 (8th Cir. 2000).

[4]We note Lawson was first cited by the district court in a footnote within its Memorandum and Order granting summary judgment.

[5]Had Orr established a prima facie case of actual disability under the ADA, Wal-Mart could have raised the threat-to-self defense.  Wal-Mart could have argued that, accepting Orr's contentions at face value, working in a single-pharmacist pharmacy, which did not provide for uninterrupted meal breaks, posed a direct threat to Orr's health and that Wal-Mart was justified in not continuing his employment. See Chevron U.S.A. Inc. v. Echazabal,122 S. Ct. 2045 (2002).

[6]Even if the limitations on Orr's ability to eat can be tied to his ability to work, they cannot salvage his claim under the ADA.  "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad range of jobs." Sutton, 527 U.S. at 491.  See also 29 C.F.R pt. 1630.2(j)(3)(i), App. § 1630.2(j) (2000).  The record reveals only that Orr's diabetic condition occasionally produced symptoms which moderately impaired his performance as a pharmacist in a single-pharmacist-on-duty retail store.  In contrast to the diabetic plaintiff in Lawson, Orr consistently performed the essential functions of a pharmacist before, during, and after his employment with Wal-Mart.  Because Orr's diabetes, as portrayed by the

## III. CONCLUSION

For the reasons cited above, we affirm the judgment of the district court.

LAY, Circuit Judge, dissenting.

I respectfully dissent.

Based upon the evidence in this particular case, I think the court errs in holding that the claimant, Stephen C. Orr, was not disabled as a matter of law within the meaning of the Americans with Disabilities Act of 1990 (ADA). The court refuses to consider Orr's contention that he was substantially limited in the major life activities of working and eating because the Seventh Circuit decision upon which he relies, <u>Lawson v. CSX Transp., Inc.</u>, 245 F.3d 916 (7th Cir. 2001), is first cited in a footnote in the district court's decision. I know of no precedent in this or any other circuit that says a party must cite a particular case in the district court in order to rely upon it on appeal.

The majority opinion cites <u>Shelton v. ContiGroup Cos.</u>, 285 F.3d 640 (8th Cir. 2002), and <u>Berg v. Norand Corp.</u>, 169 F.3d 1140 (8th Cir. 1999), to support its refusal to entertain Orr's argument. The court's reliance on these cases is misplaced. In <u>Berg</u>, we refused to allow a plaintiff to claim for the first time on appeal that her employer <u>perceived</u> her as disabled. <u>Berg</u>, 169 F.3d at 1145. Under the ADA, "being regarded" as disabled--as opposed to actually being disabled--is a separate and distinct basis for liability. <u>Compare</u> 42 U.S.C. § 12102(2)(A) <u>with</u> § 12102(2)(C). Here, however, Orr's argument has consistently been that he suffered from "a

---

record in this case, at most, only moderately limits his ability to perform a particular specialized job or a narrow range of retail pharmacist jobs, his diabetic condition does not place substantial limitations on his ability to work.

physical . . . impairment that substantially limits one or more of [his] major life activities." 42 U.S.C. § 12102(2)(A). While it is generally true that courts "do not consider arguments first raised on appeal," Shelton, 285 F.3d at 643, this does not preclude us from considering Orr's use of Lawson to support his argument that he suffers from a disability affecting one or more of life's major activities.

The majority faults Orr for not raising the issue of "eating" as a limitation on one of his life's major activities before the district court. In all due respect, this is a myopic treatment of the record before the district court. Orr's entire case turned on the refusal of his employer to allow Orr to follow a dietary regimen. Orr's argument focused on eating but eating is inextricably related to "working."[7] As the district court acknowledged, plaintiff claimed that he was substantially limited in his ability to work. This claim, however, was obviously based upon Orr's ability to control his regulated diet and insulin injections. Thus, eating at defined times is directly related to his ability to work. Orr's whole complaint as well as the evidentiary record relates to Wal-Mart's refusal to allow Orr to eat during a lunch break. To suggest eating was not raised in the district court slights the entire evidentiary record. Orr's claim before the district court is that if he is not allowed to follow his dietary regimen, he becomes completely disabled.

In Lawson, the Seventh Circuit discussed eating as one of life's major activities, but did so in terms of Lawson's ability to work: "Mr. Lawson's diabetes has limited substantially his ability to work in a broad class of jobs. . . . We believe that a jury could conclude, from this evidence, that Mr. Lawson can show that a

---

[7]The majority suggests that under Sutton, the Supreme Court has not yet decided whether working is one of life's major activities. It is much too late in the day in this circuit to hold that working may not be one of the major life activities under the ADA. See Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 954-55 (8th Cir. 1999); Helfter v. United Parcel Service, 115 F.3d 613, 617 (8th Cir. 1997). Such dicta is a poor crutch to deny Orr, or any other ADA litigant, his day in court.

record exists indicating that his diabetes has limited substantially his ability to work." 245 F.3d at 926-27. The court reasoned that the plaintiff "must always concern himself with the availability of food, the timing of when he eats, and the type and quantity of food he eats." Id. at 924. Because the ADA "addresses substantial limitations on major life activities, not utter inabilities," Bragdon v. Abbott, 524 U.S. 624, 641 (1998) (cited in Lawson, 245 F.3d at 924), the Seventh Circuit went on to hold that "[t]he district court failed to consider the extent of the restrictions imposed by Mr. Lawson's treatment regimen and the consequences of noncompliance with that regimen." Lawson, 245 F.3d at 924. As explained in his brief, Orr has experienced "seizures, deteriorated vision, slurred speech, frequent urination, lack of concentration, awareness, coordination, strength, and consciousness, all of which can, and frequently does [sic], result in hospitalization." These allegations are not what "could" happen, but are evidentiary proofs of what has happened when Orr is not allowed to follow a rigid discipline of eating at a scheduled time. This is verified through the record by Orr's deposition and medical reports. I respectfully submit that we should follow Judge Ripple's reasoning in Lawson, and hold Orr's eating and working are fundamental, major life activities that are substantially limited due to his diabetes. A distinguished panel of Judge Cudahy and Judge Easterbrook joined Judge Ripple, and I find it unreasonable to ignore our sister circuit simply because of the mistaken belief that plaintiff's counsel failed to raise that argument in the district court.[8] Furthermore, our review should be based on the full evidentiary record before us, not limited to cited cases.

Orr also testified that when he was hired by Wal-Mart, he told them of his disability and Wal-Mart agreed that they would accommodate his eating habit at noon. The district court noted that this fact was denied by Wal-Mart, but held it was

---

[8]We note Lawson was decided barely two weeks before Orr's response to the defendant's motion for summary judgment was filed. It does not, therefore, seem so unusual for that decision to be cited for the first time in the district court's Memorandum and Order granting summary judgment, issued some four months later.

not material to the issue at hand. I respectfully disagree. I think these claims set forth genuine issues of material fact relating to the questions of disability and reasonable accommodation. See Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 949-50 (8th Cir. 1999). These claims should therefore be submitted to the trier of fact.[9]

In conclusion, I submit that this is not an appropriate case for summary judgment by the court.

On this basis, I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[9]There is additional proof that Wal-Mart has now changed its policy and allows an uninterrupted lunch break at its single-pharmacist store in Chadron. This relates to the claim that Wal-Mart refused to make a reasonable accommodation and is further proof of a pretextual reason for Orr's discharge. These proofs address factual issues appropriate for a jury's resolution.