# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-2457

———————

Billy Harden,                                   *
                                                *
            Appellant,                          *
                                                *     Appeal from the United States
      v.                                        *     District Court for the Eastern
                                                *     District of Arkansas.
American Express Financial                      *
Corporation, doing business as                  *
American Express Financial                      *          [PUBLISHED]
Advisors; American Express                      *
Financial Corporation (AEFA) Long               *
Term Disability Plan; Metropolitan              *
Life Insurance Company; John Does,              *
1 through 50,                                   *
                                                *
            Appellees.                          *

———————

Submitted:  March 29, 2004
     Filed:  September 10, 2004

———————

Before MELLOY, HANSEN, and COLLOTON, Circuit Judges.

———————

PER CURIAM.

This appeal arises under the Employee Retirement Income Security Act (ERISA). Metropolitan Life Insurance Company (MetLife) denied Harden long-term disability (LTD) benefits under his former employer's ERISA plan. Harden later brought this action claiming that MetLife abused its discretion in denying benefits.

The district court granted MetLife's motion for summary judgment. After de novo review, see Shelton v. ContiGroup Cos., 285 F.3d 640, 642 (8th Cir. 2002), we reverse and remand.

Harden worked for American Express Financial Corporation (AmEx) from May 1992 until December 31, 1999, when he quit his job as a financial advisor due to cardiac and other physical problems, and stress-related mental problems. Harden, then 62 years old, applied for Social Security disability benefits and ERISA LTD benefits starting on January 1, 2000. Harden indicated that he had had two heart surgeries and could no longer tolerate the stress associated with financial planning, and that he had become too "shaky" to fill out clients' paperwork. Harden was granted Social Security benefits, but AmEx's LTD plan administrator, MetLife, denied Harden LTD benefits initially and on appeal.

In this appeal from the district court's grant of summary judgment to MetLife, Harden argues (1) MetLife's administrative record was not competent evidence because it was unsworn and uncertified, and no witness provided a foundation; (2) defendants breached their fiduciary duty to him by not obtaining or considering records unfavorable to their decision, even though Harden had signed releases for all records including Social Security records; (3) MetLife used arbitrary and capricious criteria in denying benefits; and (4) the court was required to review MetLife's decision de novo because MetLife's reliance on the opinion of its reviewing physician created a conflict of interest.

In making its decision, MetLife relied exclusively on medical records from the doctors whom Harden had listed as treating physicians. These records indicated that Harden had a stable heart condition and an undiagnosed neurological problem which caused tremors, and that Harden was able to engage in only limited stress situations and interpersonal relations.

Harden believed that MetLife was also considering his Social Security medical records, because MetLife had required Harden to apply for Social Security benefits in conjunction with his application for LTD benefits. (Appellee's App. at 371, 375.) Harden applied and, again at Met Life's request, Harden submitted to MetLife a specific authorization for release of his Social Security medical documents. (Id. at 368.)

During the administrative appeal process, Harden requested that MetLife tell him which medical records they had obtained and were relying on, but MetLife failed to respond. MetLife did tell him, however, that it had reviewed "[a]ll available documentation," and it provided a list which MetLife itself said was not necessarily all-inclusive. Because Harden had signed the necessary release to make his Social Security medical documents available to MetLife, we believe it was more than reasonable for Harden to believe that MetLife had in fact obtained those "available" records and that they were part of the documentation that had been reviewed, although not specifically listed. Thus, unbeknownst to Harden, the administrative record did not contain the Social Security records that were the basis of the Social Security Administration's grant of benefits to him.

Other items in the record also indicate that Harden was justified in believing that MetLife had obtained the Social Security medical documents. In its January 29, 2001 letter denying Harden's appeal, MetLife acknowledged Harden's Social Security award. MetLife's letter included the following language:

> Please be advised that the approval or denial of Social Security disability benefits does not guarantee the approval or denial of Long Term Disability benefits under the American Express LTD plan. Medical evidence of a disability must be satisfactory to MetLife substantiating a disability as defined in the group plan.

(Id. at 101.) Clearly, the letter did not indicate that the Social Security medical documents had not been a part of the record before MetLife. Later, in a letter to Harden's attorney on September 4, 2001, MetLife again indicated that it knew that Harden had been granted Social Security disability benefits but stated that the award did not prompt MetLife to change its findings. (Id. at 95.) We also note that Harden filled out other medical release forms for medical records from individual physicians. (Id. at 339-40). MetLife did contact these physicians to request medical records. (Id. at 156, 351). In one case, MetLife even went so far as to use the Internet to find the contact information for a physician. (Id. at 351.) The fact that MetLife used the release forms Harden provided to request medical records from these physicians but did not do so for the Social Security documents – even though MetLife specifically required Harden to apply for Social Security benefits – further demonstrates that Harden was justified in believing that MetLife had received the Social Security medical documents.

In the limited circumstances of this case, we conclude that MetLife's failure to obtain the Social Security records amounted to a serious procedural irregularity that raises significant doubts about MetLife's decision. Therefore, while MetLife's decision would normally be subject to abuse-of-discretion review--given MetLife's discretion under the plan to decide whether Harden was totally disabled, see Delta Family-Care Disability & Survivorship Plan v. Marshall, 258 F.3d 834, 840 (8th Cir. 2001), cert. denied, 534 U.S. 1162 (2002)--we conclude that the district court should have applied a less deferential sliding-scale standard of review, see Shelton, 285 F.3d at 642 (court may apply less deferential standard of review if plaintiff presents evidence demonstrating palpable conflict of interest or serious procedural irregularity that caused breach of plan administrator's fiduciary duty to plaintiff); Woo v. Deluxe Corp., 144 F.3d 1157, 1161-62 (1998) (adopting sliding-scale standard of review where less deferential standard is appropriate).

MetLife's failure to obtain and consider the Social Security records, after leading Harden to believe that it would, coupled with evidence before MetLife which supports a finding that Harden is disabled, calls for a remand to MetLife to reconsider its decision. Contrary to the dissent's assertion, we do not hold that a plan administrator has the same independent duty to develop the record that a Social Security administrative law judge does. As we noted above, our holding is limited to the facts of this case where the plan administrator led the claimant to believe that certain medical records were being considered when they were not. We note that MetLife does not contest the relevance of the omitted records.

Accordingly, we reverse and remand. The district court is directed to remand the case to MetLife with instructions to reopen the administrative record, obtain and review the Social Security records, and make a new determination of the claim, exercising the discretion given to it by the plan. Cf. Shelton, 285 F.3d at 644 (remanding to district court, and directing court to remand case to administrative committee); Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1025 n.6 (4th Cir. 1993) (district court may remand case to plan administrator). We, of course, make no intimation concerning whether or not Harden should be awarded the benefits he seeks.

Because of our disposition of this case, we conclude it is not necessary to address Harden's remaining arguments.

COLLOTON, Circuit Judge, dissenting.

The crux of Billy Harden's claim on appeal is that Metropolitan Life Insurance Company ("MetLife"), in determining Harden's eligibility for benefits under his employer's long term disability plan ("Plan"), should have considered reports of Dr. Jim Aukestuolis, a psychiatrist who examined Harden and opined on his condition. Harden asserts that the Aukestuolis reports, which were included in a file considered

by the Social Security Administration for its separate decision on government disability benefits, would have demonstrated that Harden is "totally disabled" under the Plan.

I agree with the district court that Harden had ample opportunity to make the Aukestuolis reports part of the administrative record, and that the absence of those reports from the record is fairly attributable to Harden and his counsel, rather than to a "serious procedural irregularity" committed by MetLife. *See Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund*, 76 F.3d 896, 900 (8th Cir. 1996) (requirements for heightened review of administrator's decision). I do not believe that MetLife had an independent duty to develop the administrative record by obtaining records from the Social Security Administration, and I respectfully dissent.

Harden filed his claim for long term disability benefits with MetLife on March 12, 2000. The claim form required that he "list all healthcare providers from current to past." Harden listed five physicians, but did not include Dr. Aukestuolis. (App. 339).[1] A more detailed form entitled "Activities of Daily Living" asked Harden to describe his present condition, including "any physical and/or psychiatric/psychological limitations," and to "list all Attending Physicians and Specialists to which you have been referred for this condition." Harden listed five physicians on this form, but did not mention Dr. Aukestuolis. (App. 345). On that same date, Harden also signed two authorizations to release medical records: an "authorization to furnish medical information," which permitted any physician or provider of medical services to furnish records to MetLife (App. 340), and "an authorization to secure award or disallowance information," which allowed the Social Security Administration to release medical information and award notices to MetLife. (App. 341).

_____

[1]Citations to the appendix refer to the separate appendix filed by appellees.

Six months later, on September 19, 2000, MetLife informed Harden in writing that his claim for long term disability benefits was denied, because it did not meet the criteria set forth in the Plan. With respect to the administrative record, the letter stated:

> All available documentation has been carefully reviewed. These records include, but are not necessarily limited to, the following:
>
> - Attending Physician Statement completed by Dr. William Fiser     July 21, 2000
> - Attending Physician Statement completed by Dr. Charles Barg     July 20, 2000
> - Head-up tilt test     May 22, 2000
> - Office notes from Dr. Hicks

(App. 51). The denial letter advised Harden that he "may request a review of the claim in writing," and said, "You may also submit additional medical or vocational information and any facts, data, questions or comments you deem appropriate for us to give your appeal proper consideration." (App. 52).

Harden's counsel then wrote to MetLife on November 21, 2000, and stated that Harden would appeal the decision. Counsel's letter stated that "[a]dditional medical and/or vocational information will be submitted for your review," and requested that MetLife "[p]lease furnish us copies of the medical reports upon which you relied in making your decision." (App. 148). MetLife acknowledged the appeal letter with a return letter dated the very next day, and advised Harden's counsel that "[a]ny new information that you wish to have considered in this appeal must be received in our office **no later than December 14, 2000**. If no further information is received, Mr. Harden's file will be reviewed by our Appeal Unit with the information currently on file." (App. 150) (emphasis in original).

Harden's counsel submitted a vocational assessment to MetLife on December 6, 2000, but never submitted any records from Dr. Aukestuolis or any other medical professional to augment those listed in MetLife's denial letter of September 19, 2000. On January 29, 2001, MetLife notified Harden that his appeal was denied. The appeal decision noted that MetLife had "received additional vocational information to review," but "did not receive any additional medical information to review as part of the appeal." (App. 11).

I respectfully disagree that MetLife's "failure to obtain the Social Security records amounted to a serious procedural irregularity" that justifies heightened review of the administrator's decision, and a remand to the administrator for further proceedings. Harden failed to list Dr. Aukestuolis as a treating physician on either of the claim forms that requested the names of all health care providers. MetLife listed in its denial letter of September 19 medical records upon which it relied in making the benefit determination, and records from Dr. Aukestuolis were not included. MetLife notified Harden twice that he could submit any additional medical information that he wished the administrator to consider on appeal.

A reasonable claimant, particularly one represented by counsel, should have known to submit additional medical records that were not listed in MetLife's denial letter if he wanted to ensure that the records were considered. Indeed, Harden's counsel even advised MetLife that Harden *would* submit additional medical information, but then failed to do so. If Harden and his counsel decided to assume that MetLife was considering other medical records that were *not listed* in the denial letter, simply because Mr. Harden had signed a general release of Social Security information six months earlier, then that strikes me as an unreasonable decision by the claimant and his counsel, rather than a serious procedural irregularity by the administrator.

As the court's own observations show, *ante* at 4, this is not a case where MetLife buried its head in the sand in an effort to avoid an award of benefits. The record demonstrates that if Mr. Harden merely had listed Dr. Aukestuolis's name on either of the two claim forms calling for "all health care providers" or "all Attending Physicians and Specialists," respectively, or in response to either of the two follow-up invitations to submit additional medical information, then MetLife would have made diligent efforts to locate the doctor and obtain his evaluation of the claimant. Even viewing Harden's position through the court's charitable lens,[2] therefore, the most that can be said is that MetLife had an honest misunderstanding about whether it could expect Harden to provide the names of all treating physicians on claim forms that asked him to list all treating physicians. A decision to set aside the administrator's decision under those circumstances cannot comfortably be squared with precedent that calls for heightened review upon a showing that the administrator acted under a conflict of interest, "dishonestly," based on "an improper motive," or after "failing to use judgment," such that a denial of benefits was the result of "an arbitrary decision or whim." *Buttram*, 76 F.3d at 900-01 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)).

The Supreme Court recently made clear that rules regulating disability benefit determinations under the Social Security program generally do not govern private benefit plans under ERISA. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832-33 (2003). Just as ERISA does not require the plan administrator to accord special deference to the opinions of treating physicians, or impose a heightened

---

[2]Whatever may be said about the reasonableness of Mr. Harden's claim that signing the Social Security release form led him to believe that MetLife would consider records from Dr. Aukestuolis during the administrative review process, Harden could not be misled in any relevant sense by correspondence that he received from MetLife *after* the denial of his administrative appeal, *ante* at 3-4, which MetLife said "constitute[d] the completion of the full and fair review required by the Plan[.]" (App. 102).

burden of explanation on administrators when they reject a treating physician's opinion, *id.* at 834, ERISA does not require a plan administrator on its own initiative to "develop the record" as though the administrator were an administrative law judge in the Social Security Administration. *Cf. Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

Of course, the administrator must comply with its fiduciary duties to beneficiaries under an ERISA plan, and heightened review applies if "the denial of benefits was the result of arbitrary decision or whim." *Buttram*, 76 F.3d at 901. But I find nothing in ERISA or the common law of trusts that prevents an administrator from requiring an applicant to identify with a reasonable degree of specificity the records that allegedly support his claim for benefits. Therefore, I respectfully dissent.

_____