# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1609

_____

| | | |
|---|---|---|
| Murray Rehrs, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| The Iams Company; | * | District of Nebraska. |
| Procter[1] and Gamble, Inc., | * | |
| | * | |
| Appellees. | * | |
| _____ | * | |
| | * | |
| Equal Employment | * | |
| Opportunity Commission, | * | |
| | * | |
| Amicus on Behalf of | * | |
| Appellant, | * | |
| | * | |
| Equal Employment | * | |
| Advisory Council, | * | |
| | * | |

_____

[1]We note the parties spell the name of the appellee parent corporation as both "Procter" and "Proctor." Our research shows Procter and Gamble, an American business partnership, was founded in 1937 by William Procter, a candlemaker, and James Gamble, a soapmaker. See Procter and Gamble's history available at http://www.pg.com/company/who_we_are/ourhistory.jhtml. We have not found anything suggesting the company changed the business name spelling from co-founder William Procter's name; thus, we choose to use Mr. Procter's spelling of his last name in our caption.

Amicus of Behalf of      *
Appellees.      *

_____

Submitted: November 17, 2006
Filed: May 15, 2007

_____

Before RILEY, HANSEN, and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

Murray Rehrs (Rehrs) appeals the district court's[2] entry of summary judgment in favor of Procter and Gamble, Inc. (P&G) on Rehrs's claim of disability discrimination under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, and the Nebraska Fair Employment Practices Act (NFEPA), Neb. Rev. Stat. §§ 48-1101 to 48-1126. Finding no error, we affirm.

## I. BACKGROUND

Rehrs, who suffers from Type I diabetes, worked as a warehouse technician for the Iams Company (Iams) in Aurora, Nebraska, from 1997 until 2003. Iams operated the facility on a 24-hour basis using a straight-shift schedule, i.e., three daily shifts. From 1997 until 1999, Rehrs worked a fixed schedule from 4 p.m. to midnight.

In August 1999, P&G acquired Iams, and in January 2000, P&G implemented a rotating-shift schedule for all warehouse technicians. The rotating-shift schedule consisted of two daily twelve hour shifts, one from 6:00 a.m. to 6:00 p.m. and the other from 6:00 p.m. to 6:00 a.m. Employees on this schedule worked two days, were

_____

[2]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

off two days, and worked alternating weekends. Every two weeks the first and second shift workers rotated.

Rehrs worked the rotating shift from January 2000 to February 2002 when he suffered a heart attack. Rehrs underwent bypass surgery and had a defibrillator and pacemaker implanted. Due to his medical condition, and at Rehrs's request, P&G placed Rehrs on short-term disability leave.

Rehrs returned to work by early August 2003. However, in September 2003, Rehrs's doctor submitted a letter to P&G, requesting Rehrs be placed on a fixed daytime schedule because his diabetes had become difficult to control. Rehrs's doctor believed a routine or fixed schedule would enhance the efforts to control Rehrs's blood sugar level. Rehrs was granted this accommodation and worked a straight eight-hour shift for sixty days. When P&G learned Rehrs's doctor intended for the requested accommodation to be permanent, P&G informed Rehrs that his accommodation would not continue because shift rotation was an essential part of his job.

As Rehrs's temporary accommodation was about to end, P&G encouraged Rehrs to apply for a straight shift sanitation position at the facility that would last six to nine months. Rehrs declined, indicating he did not want to clean toilets. Rehrs applied for, and was granted, temporary partial disability leave. While Rehrs was on partial disability leave, P&G sent him notices of other vacant fixed schedule day-shift jobs. Rehrs applied for two of these positions. He was denied one position due to his lack of experience, and he withdrew his application from the other citing a lack of interest. Rehrs remained on partial disability until February 2005, when his doctors declared Rehrs totally incapable of working, and Rehrs was granted total disability leave and benefits. In March 2005, P&G outsourced the operation of the Aurora facility to Excel, which operates the facility using a straight-shift schedule.

Rehrs filed a lawsuit against P&G claiming discrimination under the ADA and NFEPA when P&G refused to grant his requested accommodation to work a straight shift schedule. Rehrs and P&G filed cross-motions for summary judgment. In granting P&G's motion, the district court concluded, even assuming Rehrs's diabetes was a disability within the meaning of the ADA, Rehrs was not a qualified individual under the ADA because Rehrs could not perform an essential function of the job, specifically, shift rotation at the Aurora facility.

Rehrs appeals,[3] arguing the district court erred in finding shift rotation is an essential function of his P&G warehouse technician job. Rehrs contends he was a qualified individual under the ADA. The Equal Employment Opportunity Commission (EEOC) filed an amicus brief supporting Rehrs's position and the Equal Employment Advisory Council filed an amicus brief in support of P&G's position.

## II.    DISCUSSION

We review a grant of a motion for summary judgment de novo. Pope v. ESA Servs., Inc., 406 F.3d 1001, 1006 (8th Cir. 2005). Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Pope, 406 F.3d at 1006.

---

[3]Although Rehrs appeals the district court's decision denying his motion for summary judgment, that decision is not appealable because it is not a final order. See Wright v. S. Ark. Reg. Health Ctr., Inc., 800 F.2d 199, 202 (8th Cir. 1986). However, the district court's decision to grant P&G's motion for summary judgment results in a final decision on the merits of the case over which we do have jurisdiction. Dowling v. Davis, 19 F.3d 445, 446 n.2 (9th Cir. 1994); Stroehmann Bakeries, Inc. v. Local 776, Int'l Bhd. of Teamsters, 969 F.2d 1436, 1440 (3d Cir. 1992).

The ADA[4] prohibits an employer from discriminating against an employee "'because of the disability of such individual.'" Wood v. Crown Redi-Mix, Inc., 339 F.3d 682, 686 (8th Cir. 2003) (quoting 42 U.S.C. § 12112(a)). In the absence of evidence of direct discrimination, we analyze ADA claims under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1044 (8th Cir. 2005). Under this framework, a plaintiff bears the burden of establishing a prima facie case showing he (1) had a disability within the meaning of the ADA; (2) was qualified, with or without a reasonable accommodation, to perform the essential job functions of the position in question; and (3) suffered an adverse employment action because of his disability. Cravens v. Blue Cross & Blue Shield of Kan. City, 214 F.3d 1011, 1016 (8th Cir. 2000). The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's actions. Kratzer, 398 F.3d at 1044-45. If the employer articulates such a reason, the burden returns to the employee to show the employer's justification is a pretext. Id.

An individual is qualified if he satisfies the requisite skill, experience, education, and other job-related requirements, and "can perform the essential job functions, with or without reasonable accommodation." Cravens, 214 F.3d at 1016. Essential functions are the fundamental job duties but not the marginal functions of a particular job. Canny v. Dr Pepper/Seven-Up Bottling Group, 439 F.3d 894, 900 (8th Cir. 2006) (citing 29 C.F.R. § 1630.2(n)(1)). An employer has the burden of showing a particular job function is an essential function of the job. Benson v. Nw. Airlines, Inc., 62 F.3d 1108, 1113 (8th Cir. 1995). Evidence of whether a particular function is essential includes, but is not limited to, (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job

---

[4]We analyze disability discrimination claims under NFEPA using the same framework as claims brought under the ADA. See Orr v. Wal-Mart Stores, Inc., 297 F.3d 720, 723 (8th Cir. 2002).

performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past incumbents in the job; and (7) the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3); Heaser v. Toro Co., 247 F.3d 826, 831 (8th Cir. 2001).

For summary judgment purposes, it is undisputed that, aside from his inability to work a rotating shift schedule, Rehrs satisfactorily discharged the responsibilities of his warehouse technician position. Thus, the only question is whether the rotating shift implemented by P&G is an essential function of Rehr's technician job.

The record indicates P&G acquired the facility in August 1999 and implemented shift rotation in January 2000. Rehrs knew of the new change, and he worked the shift rotation schedule for more than two years until he suffered a heart-attack. The record further shows all production-level technicians, like Rehrs, worked the rotating shift schedule from its inception. There were no permanent exceptions to this rule.

P&G claims shift rotation was an essential function of the positions at the Aurora facility during the relevant period because all P&G subsidiaries operated under a High Performance Work System (HPWS), and shift rotation was a component of this system. According to P&G, it had employed shift rotation since the 1960s in its new production facilities, and in the 1980s began transitioning its existing production facilities from traditional work systems to HPWS. P&G contends shift rotation exposes employees to management, and to more resources, suppliers, and outside customers with whom the company only interfaces during the day shift. P&G believes this type of exposure provides all employees with additional opportunities for training and development to further their career opportunities in the company and, in turn, increases productivity. P&G asserts that not implementing shift rotation for all warehouse technicians would harm the company from a production standpoint and allowing an employee to work a straight shift would undermine the team concept.

P&G further claims not enforcing shift rotation would adversely affect other technicians, creating inequities, because these other technicians would be forced to work the night shift exclusively or for longer periods and lose the benefits of shift rotation, thereby decreasing their opportunities for promotion and development.[5]

All of these factors weigh heavily in favor of finding shift rotation in the P&G work culture is an essential function of working as a warehouse technician. Commencing in January 2000, the facility did not have a straight day-shift technician position–all technician positions were on rotating shifts. Allowing Rehrs to work a straight day-shift schedule would have placed a heavier or unfavorable burden on other technicians at the facility. Under the ADA, an accommodation that would cause other employees to work harder, longer, or be deprived of opportunities is not mandated. Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1094 (5th Cir. 1996) (citing Milton v. Scrivner, Inc., 53 F.3d 1118, 1125 (10th Cir. 1995), and 29 C.F.R. § 1630.2(p)(2)(v)).

Based on the affidavits of two co-workers, Rehrs claims shift rotation is not an essential function of his warehouse technician job. Rehrs argues the plant operated on a straight-shift schedule before P&G's acquisition of the plant and again after P&G outsourced the facility to Excel, while all other functions of the facility, with the exception of the shift rotation, remained the same. However, as the district court

---

[5]Michael Lindsey, a global human resources director for P&G, and Kimberly Schanaman, a former human resources director at the Aurora facility, provided affidavits giving reasons for P&G's implementation of a rotating shift at the facility. Rehrs contends these affidavits are irrelevant and the district court should not have admitted them. As P&G notes, Rehrs's argument is actually an attempt to appeal the district court's ruling regarding these affidavits. We conclude the district court properly considered these affidavits and did not abuse its discretion, because the persons providing the affidavits clearly had personal knowledge of the reasons for implementing the rotating shift and the legitimacy of those reasons was potentially at issue. See Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1317-18 (8th Cir. 1996); see also Fed. R. Civ. P. 56(e).

noted, the fact that straight shifts were in effect at the Aurora facility before and after P&G ran the facility has little relevance. P&G does not have to exercise the same business judgment as other employers who may believe a straight shift is more productive. It is not the province of the court to question the legitimate operation of a production facility or determine what is the most productive or efficient shift schedule for a facility. See Milton, 53 F.3d at 1124.

Rehrs also contends the duties performed at the facility on the day shift were the same duties performed on the night shift. He contends essential functions are duties to be *performed* and a rotating shift is not *performed*. See 29 C.F.R. § 1630.2(n)(1). Thus, Rehrs asserts, shift rotation is not an essential part of the job. However, the term essential function encompasses more than core job requirements; indeed, it also may include scheduling flexibility. Laurin v. Providence Hosp., 150 F.3d 52, 59 n.6 (1st Cir. 1998).

Rehrs also argues P&G allowed him a temporary exception from shift rotation, which demonstrates shift rotation is not essential. However, "[a]n employer does not concede that a job function is 'non-essential' simply by voluntarily assuming the limited burden associated with a temporary accommodation, nor thereby acknowledge that the burden associated with a permanent accommodation would not be unduly onerous." Id. at 60-61 (citing Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996)). "To find otherwise would unacceptably punish employers from doing more than the ADA requires, and might discourage such an undertaking on the part of employers." Phelps v. Optima Health, Inc., 251 F.3d 21, 26 (1st Cir. 2001) (citations omitted).

Here, P&G required all employees in Rehrs's position to rotate shifts. Such a generally applicable requirement was not discriminatory. The ADA does not require P&G to create a new straight shift position for Rehrs. Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 950 (8th Cir. 1999) (holding an employer is not obligated to create a new position, or to transform a temporary position into a permanent position as an accommodation, or to eliminate or reallocate the essential functions of a job to

-8-

accommodate its disabled employees); Malabarba v. Chi. Tribune Co., 149 F.3d 690, 696 (7th Cir. 1998) ("[T]he ADA does not require that employers transform temporary work assignments into permanent positions."); Dalton v. Subaru-Isuzu Auto., Inc., 141 F.3d 667, 680 (7th Cir. 1998) (stating the ADA does not require employers to create full-time positions to accommodate disabled employees). "The [ADA] does not require affirmative action in favor of individuals with disabilities. It merely prohibits employment discrimination against qualified individuals with disabilities, no more and no less." Turco, 101 F.3d at 1094 (citing Daugherty v. City of El Paso, 56 F.3d 695, 700 (5th Cir. 1995)).

In its amicus brief, the EEOC argues P&G should have reassigned Rehrs to a vacant, comparable position as an alternative accommodation. Rehrs, however, did not make this argument in the district court, and it is axiomatic a party generally may not raise new arguments on appeal of an order granting summary judgment. Orr, 297 F.3d at 725. Thus, relying on this general rule, neither Rehrs nor amicus can make this argument now.

However, even assuming Rehrs could make this argument, it fails because the record indicates P&G encouraged Rehrs to apply for other positions not requiring a shift rotation, including a straight-shift sanitation job that would last six to nine months. Rehrs declined. Instead, Rehrs applied for, and was granted, temporary partial disability leave. While Rehrs was on partial disability leave, P&G again encouraged Rehrs to apply for other positions by sending him notices of vacant fixed schedule day-shift jobs. The EEOC contends the sanitation job and the notices sent to Rehrs fall short of P&G's duty to reassign. "[T]o prevail on an ADA claim where the employer has offered reassignment as a reasonable accommodation, the employee must offer evidence showing both that the position offered was inferior to [his] former job and that a comparable position for which the employee was qualified, was open." Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 99 (2d Cir. 1999). Here, Rehrs has not provided evidence of a comparable open position for which he was qualified. Instead, Rehrs wants P&G to create a straight-shift position for him. P&G did not

have any other positions available that appealed to Rehrs, and P&G was not required to eliminate an essential function of the warehouse technician job to accommodate its disabled employee nor was P&G required to create a new straight-shift technician position or similar position to accommodate Rehrs. Fjellestad, 188 F.3d at 950; Malabarba, 149 F.3d at 701; Dalton, 141 F.3d at 680. As the EEOC notes, a disabled individual is not entitled to an accommodation of his choice. Cravens, 214 F.3d at 1019.

Viewing the facts in the light most favorable to Rehrs, we conclude shift rotation was a non-discriminatory essential function of Rehrs's technician job at P&G and Rehrs's restrictions to work only a straight shift rendered him unqualified to carry out all the essential functions of his P&G technician job. Thus, summary judgment was appropriate.

## III.  CONCLUSION

Based on the foregoing, we affirm the judgment of the district court.

_____