# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1554

_____

In re: Robert G. Zepecki,     *
    *
         Debtor.     *
    *
_____     *
    *    Appeal from the United States
Steven C.R. Brown,     *    Bankruptcy Appellate Panel
    *    for the Eighth Circuit.
         Appellant,     *
    *
      v.     *
    *
James C. Luker,     *
    *
         Appellee.     *
    *

_____

Submitted: September 10, 2001
Filed: January 25, 2002

_____

Before McMILLIAN, BEAM, and HANSEN, Circuit Judges.

_____

PER CURIAM.

After denying Robert Zepecki's bankruptcy discharge for failure to disclose prepetition transfers, the bankruptcy court <u>sua sponte</u> ordered attorney Steven C.R. Brown to account for funds he received from Zepecki or from B & B Diversified

Resources, Inc. (B & B Diversified), Zepecki's closely-held corporation. Following a hearing, the court[1] ordered Brown to return to the bankruptcy estate $32,840 of the $40,000 paid to him as attorney's fees. The United States Bankruptcy Appellate Panel for the Eighth Circuit (BAP) affirmed, and Brown appeals. We affirm.

## I.

The bankruptcy court ruled, in an adversary proceeding initiated by Zepecki's former wife Bonnie Kania, that Zepecki had failed to disclose the sale of Illinois real estate on his Chapter 7 schedules. Zepecki and Kania were granted a decree of divorce on September 28, 1995, which awarded Kania a $46,500 judgment against Zepecki for Kania's contribution toward paying off the mortgage on the Illinois real estate. Zepecki sold the real estate and executed a warranty deed to effect its transfer on October 20, 1995. He filed his Chapter 7 petition on February 7, 1996. The bankruptcy court concluded that Zepecki's failure to disclose his interest in and transfer of the Illinois real estate and other property supported denial of his bankruptcy discharge for making a false oath under 11 U.S.C. § 727(a)(4)(A).

During the proceedings in the adversary case, the bankruptcy court became aware that the proceeds from the sale of the Illinois property were transferred to Steven C.R. Brown, who received $40,000 of the funds as attorney's fees. The court ordered Brown to appear and account for the funds he received from Zepecki or B & B Diversified and to be examined as to the reasonableness of his attorney's fees.

The bankruptcy court found that Brown received compensation of $20,000 postpetition and ordered that these funds be reimbursed to the estate. Furthermore, of the $20,000 Brown received prepetition, the court found that he was entitled to

---

[1]The Honorable James G. Mixon, United States Bankruptcy Judge for the Eastern District of Arkansas.

fees of $7,160 and ordered him to reimburse the remaining $12,840 to the estate. The court found that the funds Brown received were proceeds from property owned by Zepecki as an individual, and essentially Zepecki's only valuable asset.

With the Illinois land sale, Zepecki was attempting to perform a tax-free exchange of property under § 1031 of the Internal Revenue Code, which avoids capital gains on the sale of property exchanged for property of a like kind. See 26 U.S.C. § 1031. In November 1995, Brown received the entire sale proceeds of $102,989 to hold in escrow, pursuant to a "1031 Exchange of Property Escrow Agreement" (1031 Exchange Agreement) dated October 20, 1995, wherein Brown was identified as the Escrow Holder, Zepecki was identified as the Exchanger and owner of the real estate, and James Burch was identified as the Purchaser of the real estate. Brown, Zepecki, and B & B Diversified entered into a "Subordinate Addendum to 1031 Exchange of Property Escrow Agreement" (Subordinate Addendum) dated November 15, 1995, which provided that Brown would be paid $40,000 from the real estate proceeds for services related to the section 1031 transaction. Brown disbursed $65,000 of the escrow funds to Ted Holder in Atlanta, Georgia, prior to Zepecki's February 7, 1996, bankruptcy filing, and disbursed the remaining $62,989 to Holder shortly after Zepecki filed the bankruptcy petition. Brown describes Holder as a financial agent handling payments to third parties. Holder transferred Brown's fees under the Subordinate Addendum back to Brown in multiple transfers. Brown received $20,000 prior to Zepecki's bankruptcy filing and $20,000 following the filing. The bankruptcy court described the manner in which Brown allegedly received his attorney's fees as "convoluted" and found that his testimony "is so improbable that it casts serious doubt on his credibility." In re Zepecki, No. 96-30125M, slip op. at 8 (Bankr. E.D. Ark. June 22, 2000).

The issues on appeal to the BAP were: (1) whether the bankruptcy court had jurisdiction to order disgorgement of the fees, (2) whether the court abused its discretion in ordering disgorgement, and (3) whether the disgorged fees should be

3

returned to the estate as a matter of law. The BAP concluded that sections 105 and 329 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2017 provided jurisdiction for the bankruptcy court's order. Further, it found that the court acted within its discretion in ordering disgorgement of the fees, which was appropriate as a matter of law.

On appeal to this court, Brown asserts: (1) that the bankruptcy court lacked jurisdiction to order Brown to disgorge the fees, (2) that his fee was fully earned prepetition and was not a part of Zepecki's bankruptcy estate, (3) that the bankruptcy court cannot use section 105 to override other sections of the Bankruptcy Code, and (4) that the BAP compounded the bankruptcy court's errors with additional factual and legal errors. We conclude that the bankruptcy court had jurisdiction and acted within its discretion when it ordered disgorgement of Brown's fees. Further, any factual inaccuracies in the lower courts' rulings, which Brown variously describes as false, misapprehensions or misstatements of fact, slanderous innuendos, and irrelevant slanderous innuendos, do not undermine the conclusion that the record contains abundant, competent evidence to support the bankruptcy court's decision to order disgorgement of fees from Brown.

II.

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Papio Keno Club, Inc. v. City of Papillion (In re Papio Keno Club, Inc.), 262 F.3d 725, 728-29 (8th Cir. 2001). As the second court to review the bankruptcy court's factual findings, our independent review gives deference to the BAP's conclusions. Id. at 729 (stating that to be clearly erroneous, a decision must "'strike us as wrong with the force of a five-week-old, unrefrigerated dead fish,'" quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988), cert. denied, 493 U.S. 848 (1989)). We review a decision regarding attorney's fees for an abuse of discretion. Walton v. LaBarge (In re Clark),

223 F.3d 859, 862 (8th Cir. 2000). The bankruptcy court has broad power and discretion to award or deny attorney's fees or to order disgorgement of fees already paid. Id.

To the extent prepetition attorney's fees exceed the reasonable value of the legal services provided, the bankruptcy court may order the return of attorney's fees paid within one year prior to the date that a debtor files a bankruptcy petition for fees related to legal services performed in connection with or in contemplation of bankruptcy proceedings. See 11 U.S.C. § 329(a), (b); see also Snyder v. Dewoskin (In re Mahendra), 131 F.3d 750, 757 (8th Cir. 1997), cert. denied, 523 U.S. 1107 (1998). "'In contemplation of' generally denotes that the impelling cause of the transaction is influenced by the possibility or imminence of a bankruptcy proceeding." In re Telemaintenance, Inc., 157 B.R. 352, 354 (Bankr. N.D. Ohio 1993) (citing Tripp v. Mitschrich, 211 F. 424 (8th Cir. 1914)). For postpetition legal services provided to the debtor, an attorney may be compensated from property of the estate only if he follows the notice and approval process delineated in the Bankruptcy Code. See 11 U.S.C. §§ 327, 330; Mahendra, 131 F.3d at 756.

III.

We agree with the BAP that the bankruptcy court had jurisdiction to review the reasonableness of the attorney's fees paid to Brown prepetition pursuant to section 329 of the Bankruptcy Code. The record supports a finding that Brown represented Zepecki in the Illinois land transaction in connection with or in contemplation of the possibility or imminence of a bankruptcy proceeding. Although Brown argues that he represented B & B Diversified rather than Zepecki, the Subordinate Addendum, under which Brown's services were contracted, identified both Zepecki and B & B Diversified as the client. Further, the Illinois real estate was titled in Zepecki individually, and the warranty deed conveyed the real estate accordingly. The 1031 Exchange Agreement identified Zepecki as the owner of the real estate and Brown as

5

the Escrow Holder. B & B Diversified was not even a party to the 1031 Exchange Agreement. Finally, Brown's fees were to be paid from proceeds of the real estate sale. The bankruptcy court's finding that Brown represented Zepecki in the transaction and was paid from funds which would have been property of the bankruptcy estate was not clearly erroneous.

We also find no clear error in the bankruptcy court's finding that Brown's representation was in connection with or in contemplation of the possibility or imminence of a bankruptcy proceeding. The Illinois land transaction occurred within one month after Zepecki's divorce from Ms. Kania, who was Zepecki's largest creditor, and within four months prior to the bankruptcy filing. The proceeds of the land sale constituted Zepecki's largest asset with which to satisfy Ms. Kania's judgment. The bankruptcy court found that the land transaction was a sham and was performed in an effort to prevent the asset from becoming property of Zepecki's bankruptcy estate and prevent his ex-wife from recovering on her judgment. Zepecki lost his right to a bankruptcy discharge because he failed to identify the transaction or its proceeds on his bankruptcy schedules, which further supports the court's conclusion that Zepecki was trying to keep the asset from his wife. These facts support the bankruptcy court's conclusion that Zepecki was contemplating bankruptcy when he transferred the Illinois property and when Brown assisted in the attempted section 1031 transfer of that same property. See In re Keller Fin. Servs. of Fla., Inc., 248 B.R. 859, 878 (Bankr. M.D. Fla. 2000) (holding that the phrase "in contemplation of" requires a subjective inquiry and allows a court to review fees paid for services "performed at a time when the debtor was contemplating bankruptcy," regardless of the nature of the services (internal quotations omitted)). On these facts, we cannot say that the bankruptcy court clearly erred in finding that Brown's representation of Zepecki relating to the Illinois land transaction was in contemplation of the filing of a bankruptcy proceeding.

The bankruptcy court also acted within its broad discretion to order disgorgement of the fees Brown received. The court has the authority to disregard a fee agreement between a debtor and counsel in determining the reasonableness of counsel's fees under section 329(a). Mahendra, 131 F.3d at 757. Section 329 requires the attorney to show that agreed upon compensation for legal services is reasonable. Id. Approving Brown's fees of $7,160 was within the bankruptcy court's discretion. Brown documented entitlement to these fees from invoices showing he had performed prepetition services for 35.8 hours at $200 per hour. On the record presented, a finding that additional prepetition fees are unreasonable or excessive is not clearly erroneous. Brown has failed to prove he is entitled to retain any fees for postpetition services because he did not seek court approval to be paid from assets of the estate. Id. at 756-57. Having reviewed the entire record, we conclude that the bankruptcy court acted within its sound discretion in ordering Brown to return to the bankruptcy estate $32,840 paid to him as attorney's fees.

IV.

In his opening brief, Brown includes six pages of comments on the accuracy of the BAP's opinion, describing certain portions of the opinion as false or slanderous. Many of Brown's claims of errors amount to contentions of fact. These comments are irrelevant to this court, as they contradict findings of fact made by the bankruptcy court which we have found sufficient to overcome the "clearly erroneous" standard of review. Other assertions made by Brown pertain to irrelevant or insignificant inaccuracies which have no impact in this appeal.

Comments made by Brown which we find most troublesome are directed to the bankruptcy court's and the BAP's discussions regarding Zepecki's ability to access the proceeds from the land transaction after they were transferred by Brown to Holder. At page 15 of his opening brief, Brown states that a quotation by the bankruptcy court

of Brown's testimony is fictional.  The bankruptcy court quoted Brown as testifying, in regard to a section 1031exchange, as follows:  "[T]he seller at any time can appoint that money to himself or pledge it for some – use it for his own benefit."  In re Zepecki, No. 96-30125M, slip op. at 9 (Bankr. E.D. Ark. June 22, 2000).  In his brief, Brown states: "The quote attributed to Brown is a pure fabrication of unknown origin.  No such testimony appears anywhere in the transcript."  (Appellant's Br. at 15.)

The entire record from the adversary proceeding in which the bankruptcy court denied Zepecki's discharge was made a part of the record herein.  (Hr'g Tr. at 64.) Included in the adversary proceeding record is Brown's deposition taken on June 3, 1999.  Brown testified in the deposition exactly as quoted by the bankruptcy court. (Brown Dep. at 24.)  Although the bankruptcy court cited the hearing transcript rather than the deposition transcript as the source, the quotation was not "pure fabrication" and was far from being of "unknown origin;" the quotation came from Mr. Brown's own mouth.  Furthermore, Brown repeated the same belief regarding Zepecki's ability to access the funds after the sale in response to questions from the court at the hearing.  (Hr'g Tr. at 78-79.) [2]

Brown labels as "false" the BAP's conclusion that, "[a]t any time the Debtor could have appointed the money for himself or used it for his own benefit." (Appellant's Add. at A-17.)  In support of his contradiction of the BAP's statement,

_____

[2]Q (by court)        All right.  After you transferred that money over to Mr. Holder, why would you say that it was no longer Doctor Zepecki's money to get back if he wanted to?
. . . .
A (by Brown)        . . . But to get back to your question, could he have gotten it back?  I think they could have said, "We're going to stop what we're working on. We've decided we're going to quit, liquidate the corporation, and take whatever's left."  I think they could have done that, but nobody did.

 (Hr'g Tr. at 78-79.)

8

Brown cites testimony from the adversary proceeding by Zepecki and Trustee James Luker, as well as a statement by the bankruptcy court. Zepecki actually testified that "Up until the loan commitment, I could have withdrawn the 1031, but after the loan commitment and the money was spent I couldn't recall it." (Adversary Tr. at 127.) This testimony, instead of supporting Brown's position, contradicts it. Ted Holder's deposition testimony also contradicts Brown's assertion that Zepecki could not access the funds. Holder testified that he transferred the funds at Zepecki's authorization, (Holder Dep. at 10, 15), and paid Zepecki's personal expenses on various trips made to locate investment properties, (Holder Dep. at 16, 17, 19-20).

We have reviewed the entire record in this case, including the record from the adversary proceeding and the deposition transcripts. We conclude Brown's assertions of error are unavailing. Having considered all of Brown's arguments, we find nothing in the record that would require us to overturn the findings and conclusions of the bankruptcy court or the BAP.

V.

Accordingly, we affirm the judgment of the Bankruptcy Appellate Panel.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

9