# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-3096

_____

Thomas D. Stalnaker, Trustee, &ast;
&ast;
    Appellee, &ast;
&ast; Appeal from the United States
v. &ast; Bankruptcy Appellate Panel
&ast; for the Eighth Circuit.
DLC, Ltd., a Nebraska Corporation; &ast;
DLC Family Trust, Ltd., a Nebraska &ast;
Corporation, &ast;
&ast;
    Appellants. &ast;

_____

Submitted: March 8, 2004
Filed: July 22, 2004

_____

Before RILEY, MCMILLIAN, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

This case arises from bankruptcy proceedings in which a trustee exercised the rights of an unsecured creditor under 11 U.S.C. § 544(b) to recover fraudulently transferred assets. The bankruptcy court[1] found that the debtor-appellant, DLC, Ltd. ("DLC"), a Tilden, Nebraska farming corporation, transferred assets with the intent

_____

[1]The Honorable Timothy J. Mahoney, United States Bankruptcy Judge for the District of Nebraska.

to hinder, delay or defraud creditors and that the trustee-appellee and his attorneys properly pursued avoidance of the transfer for the benefit of the estate. In addition, the court awarded trustee's and attorneys' fees and expenses as administrative claims under 11 U.S.C. § 330, even though the unsecured creditors settled all claims against the estate on the eve of trial. DLC appeals the judgment of the Eighth Circuit Bankruptcy Appellate Panel[2] that affirmed the order of the bankruptcy court. We find that the trustee properly pursued avoidance of the transfer and that the bankruptcy court properly awarded trustee's and attorneys' fees and expenses. Further, we find that DLC waived its argument regarding the unavailability of fees due to a conflict of interests, because DLC did not raise this argument to the lower courts. Accordingly, we affirm.

## I. Facts

DLC filed Chapter 7 bankruptcy on September 2, 1997. Prior to the filing, there were a number of unresolved questions regarding liability for DLC's purchase and application of herbicide and other crop inputs from Central Farmer's Cooperative, Nonstock, formerly known as Farmers Cooperative Exchange of Elgin, NE ("Cooperative"). There was also a question of liability regarding damage to DLC's crops from Cooperative's inputs. Additionally, there was a dispute over the damages due from an insurer, Blakely Crop Hail, Inc. ("Blakely"), for damage that resulted from a hail storm. Finally, there was a question as to whether DLC fraudulently transferred assets to DLC Family Trust, Ltd. ("Family Trust").

In 1993, when the shareholders of DLC created Family Trust, DLC transferred to Family Trust all of its real estate, worth more than $750,000. In exchange, Family

---

[2]The Honorable Robert J. Kressel, United States Bankruptcy Judge for the District of Minnesota, authored the opinion for a panel that included the Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of Missouri, and the Honorable Nancy C. Dreher, United States Bankruptcy Judge for the District of Minnesota.

Trust assumed $395,000 in liabilities and executed an $84,213 promissory note. Later, in 1995, DLC assigned to Family Trust the legal claims against Blakely and Cooperative as well as a claim for wrongful replevin. These claims were purportedly worth a collective face value of $240,000. DLC also forgave the 1993 promissory note, and Family Trust agreed to prosecute the claims using its own resources. DLC maintained the right to collect twenty-five percent of any net proceeds of these claims in excess of the value of the promissory note, plus accumulated interest, plus the total of fees and expenses incurred in pursuing the claims.

In December 1998, the trustee filed a complaint against DLC and Family Trust under 11 U.S.C. § 544(b) to avoid the transfer of assets to Family Trust. The trustee invoked the Nebraska Uniform Fraudulent Transfer Act, Neb. Rev. Stat. §§ 36-701 to 36-712, as the applicable law. At the time, the claims regarding Blakely and Cooperative remained unresolved.[3] On May 4, 2000, Blakely and Family Trust settled the crop insurance dispute. Then, on October 3, 2001, Cooperative, DLC and Family Trust entered into a settlement agreement that resolved the crop inputs claim. After settlement, the trustee's attorneys filed an application for fees, and DLC filed a motion to dismiss. DLC argued that trial was unnecessary because all of the unsecured creditors settled their claims and could not benefit from avoidance of the transfer. The bankruptcy court determined that a trial was necessary to resolve all administrative claims and address the issue of fraudulent transfers. The bankruptcy court denied DLC's motion to dismiss and held a trial on February 26, 2002.

In March 2002, Koley Jessen, P.C. ("Koley Jessen"), attorneys for the trustee, contacted DLC about hiring an attorney, Michael Mostek. Mostek previously practiced with McGill, Gotsdiner, Workman & Lepp, P.C. ("McGill"), the attorneys for DLC. On June 28, 2002, Koley Jessen submitted an affidavit to the bankruptcy

---

[3]The bankruptcy filing also listed a debt owed to an insider that was subsequently waived.

court to explain Mostek's history with McGill and to explain Koley Jessen's belief that DLC would waive any claim resulting from a potential conflict of interest. On July 9, 2002, DLC submitted a reply affidavit in which it disclaimed any intent to waive potential claims relating to the hiring of Mostek. DLC never asked to disqualify Mostek or Koley Jessen. Further, DLC did not argue to the bankruptcy court that Koley Jessen could not recover a fee due to a conflict of interest.

On December 9, 2002, after a failed attempt at mediation, the bankruptcy court held that the transfers were fraudulent but withheld final judgment until the trustee and his attorneys could resubmit an application for fees and expenses. On February 26, 2003, the court issued an order that avoided the transfers for the benefit of the estate and awarded fees and expenses in the amount of $58,280.25. The Bankruptcy Appellate Panel affirmed the judgment, and DLC appeals.

## II. Standard of Review

We address de novo the legal issues of whether avoidance of the transfers was a benefit to the estate and whether the conflict of interest issue was timely raised. Drewes v. Vote (In re Vote), 276 F.3d 1024, 1026 (8th Cir. 2002). We review the award of fees for abuse of discretion. Brown v. Luker (In re Zepecki), 277 F.3d 1041, 1045 (8th Cir. 2002). We review the bankruptcy court's factual findings behind these legal conclusions and award of fees for clear error. In re Vote, 276 F.3d at 1026; Dahlquist v. First Nat'l Bank in Sioux City, Iowa (In re Dahlquist), 751 F.2d 295, 299 (8th Cir. 1985).

## III. Avoidance

11 U.S.C. § 544(b) authorizes the trustee to exercise an existing unsecured creditor's right to avoid a transfer if the creditor holds such a right under non-bankruptcy law. If the trustee identifies such a creditor with an allowable claim and a valid right to avoid the transfer, the trustee may avoid the claim and recover the entirety of the property or value of the property "for the benefit of the estate." 11

U.S.C. § 550(a). The trustee's recovery is not limited to the value of the claim of the unsecured creditor(s) he identifies. Liebersohn v. IRS (In re C.F. Foods, L.P.), 265 B.R. 71, 86 (Bankr. E.D. Pa. 2001) (citing Moore v. Bay (In re Estate of Sassard & Kimball, Inc.), 284 U.S. 4 (1931)). The trustee identified unsecured creditors with allowable existing claims under the Nebraska Uniform Fraudulent Transfer Act at the time of the bankruptcy filing. Having done so, the trustee took over these creditors' rights. DLC does not dispute that the transfers were fraudulent, and, accordingly, the trustee may recover the property transferred, or the value of such property, for the benefit of the estate. 11 U.S.C. § 550(a).

DLC argues that because all creditors' claims settled, any assets recovered by the trustee were not recovered "for the benefit of the estate." DLC incorrectly characterizes the estate and its unsecured creditors as being synonymous. As noted by the Bankruptcy Appellate Panel in this case:

> "Estate" is a statutory term that Congress uses to denote the asset side of the bankruptcy balance sheet. 11 U.S.C. § 541 defines what constitutes property of the estate and what can be credited to the asset account. In virtually every case, recovery of any property benefits the estate. In fact, section 541(a)(3) specifically includes in the estate property recovered under section 550. Creditors are on the opposite side of the balance sheet.

Stalnaker v. DLC, Ltd. (In re DLC, Ltd.), 295 B.R. 593, 607 (B.A.P. 8th Cir. 2003).

The facts of the present case make clear that the bankruptcy "estate" is not synonymous with the concept of a pool of assets to be gathered for the sole benefit of unsecured creditors. Here, administrative claims that relate to over four years of attorneys' fees and expenses and trustee's fees and expenses also exist and are recoverable under 11 U.S.C. § 330(a). The fact that unsecured creditors settle on the eve of trial does not extinguish the bankruptcy estate as a legal entity, nor does it extinguish other claims on the assets of the estate, such as the administrative claims.

Further, we have no doubt that the trustee's efforts to litigate the matter created DLC's incentive to settle the unsecured claims. We find no authority for the proposition that a debtor may settle with unsecured creditors on the eve of trial, thereby thwarting professionals in their attempt to collect fees for at least four years of work to administer the bankruptcy estate. The trustee and his attorneys reasonably pursued the avoidance, it was for the benefit of the estate, and they are entitled to administrative expenses.

DLC relies on McCord v. Agard (In re Bean), 251 B.R. 196, 204 (Bankr. E.D.N.Y. 2000), aff'd, 252 F.3d 113 (2d Cir. 2001), which stated, "[I]t would be an abuse of discretion to bring an action to set aside a post-petition transfer if it would not financially benefit the estate." Id. It has no application to this case. In In re Bean, the debtors sold a home for its fair market value, and the transfer did not result in any damage to the bankruptcy estate. There, avoidance of the transfer was not of benefit to the estate; it was merely the exchange of home equity for liquid assets while the estate retained equal value. In this case, the facts are different; avoidance of these pre-petition fraudulent transfers, which were not of a reasonably equivalent value, increased the asset pool for the benefit of the estate.

## IV. Conflict of Interest

We do not ordinarily review an issue on appeal if the parties did not first raise it at trial unless it is a strictly legal question and manifest injustice would result from our failure to review it. Orr v. Wal-Mart Stores, Inc., 297 F.3d 720, 725 (8th Cir. 2002). On February 26, 2002, the bankruptcy court held the trial in this case. As stated above, on or around March 1, 2002, Koley Jessen informed DLC of an intent to hire attorney Mostek, who previously practiced with McGill. On June 28, 2002, Koley Jessen submitted an affidavit to explain the hiring of Mostek and the belief that DLC would waive any claim of potential conflict of interest. On July 9, 2002, DLC entered a reply affidavit to disclaim intent to waive potential claims related to the hiring of Mostek. The reply stated, "DLC received no further information as to what

'conflict' 'exists' and therefore refused to sign the 'Consent & Waiver' on or about April 1, 2002." There is nothing in this reply to suggest that DLC or counsel for the debtors requested or filed a motion for disqualification or argued to the bankruptcy court that fees be denied. Additionally, our review of the DLC's brief submitted to the Bankruptcy Appellate Panel on April 21, 2003, reveals that DLC did not raise the issue of conflict of interest at that time.

DLC, in this appeal, suggests that there is an irrebuttable presumption of shared confidences and impropriety. We do not address that issue or the issue of disinterestedness because, having been neglected in the early stages of litigation, it is waived. It suffices to say, "[a]s a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." State v. Ehlers, 631 N.W.2d 471, 479 (Neb. 2001).

## V. Attorneys' Fees

We review the award of fees for abuse of discretion. In re Zepecki, 277 F.3d at 1045. We review the factual findings that led to the award of fees for clear error. In re Dahlquist, 751 F.2d at 299. An abuse of discretion occurs if the bankruptcy court does not apply the proper legal standard or procedures or if the award is based on clearly erroneous findings of fact. Chamberlain v. Kula (In re Kula), 213 B.R. 729, 735 (B.A.P. 8th Cir. 1997). To consider a finding of fact clearly erroneous, we must have a definite and firm impression that the lower court made a mistake. Id.

The bankruptcy court awarded fees under 11 U.S.C. § 330(a), which allows a court to grant "reasonable compensation" for "actual, necessary" services and expenses. The lodestar method, calculated as the number of hours reasonably expended multiplied by a reasonable hourly rate, is the appropriate calculation of fees. In re Kula, 213 B.R. at 736. Compensation may be reasonable though the trustee's services do not benefit the estate. The determination of reasonable compensation under section 330 includes accounting for factors such as hours

reasonably expended, competitive hourly rates, and the necessity and benefit of the work to the completion of a case (not simply to the settlement of unsecured creditors' claims). 11 U.S.C. § 330(a)(3).

We do not find clear error in the bankruptcy court's determination that the trustee had a fiduciary obligation to pursue the fraudulent transfer claim, the trustee was met with opposition every step of the way, the trustee had valid claims to pursue for more than four years, his services were necessary, and the hourly rate and hours expended were reasonable. Additionally, after reviewing the record, we are left with the firm impression that the bankruptcy court properly concluded that, had the trustee not litigated this matter, DLC likely would not have settled. We do not find the bankruptcy court's award of reasonable fees and expenses to be an abuse of discretion.

We affirm the judgment of the BAP.

_____