# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 24-6011
_____

In re: Shannon Lee Smith

*Debtor*

------------------------------

Roy A. Arrieta

*Creditor - Appellant*

v.

Shannon Lee Smith

*Debtor - Appellee*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - Minneapolis

_____

Submitted: August 26, 2025
Filed: October 17, 2025

_____

Before SURRATT-STATES, NORTON, and JONES, Bankruptcy Judges.

_____

NORTON, Bankruptcy Judge.

This case involves a first impression issue in the Eighth Circuit: what is a "personal injury tort" for purposes of 28 U.S.C. § 157(b)(5)? The question is not academic, since subsection 157(b)(5) provides that the district court – and not the bankruptcy court – shall try "personal injury tort" claims. Courts normally employ one of three tests to decide what constitutes a personal injury tort. In this case, the bankruptcy court adopted the narrowest of the three tests and held that a creditor's claim for damages against the debtor was not such a tort. The bankruptcy court then proceeded to hear and determine the debtor's defenses to the tort claim and entered a final order denying the claim. Because we conclude that, under any of the three tests, the creditor's claim was for damages for a "personal injury tort," we need not reach the issue of which test to adopt and instead reverse and remand.

## FACTUAL BACKGROUND

Appellee Shannon Smith ("Debtor"), a Minnesota resident, filed a voluntary petition for chapter 7 relief on December 30, 2022. She scheduled her former live-in partner, appellant Roy Arrieta ("Creditor") as a disputed creditor for an "unknown" amount. The Notice of Commencement stated there appeared to be no assets and instructed creditors not to file claims unless they received a notice to do so.

Shortly after the chapter 7 trustee concluded the meeting of creditors, Debtor's scheduled creditors received a notice of probable assets and a deadline to file claims of June 5, 2023 (the "Bar Date"). Debtor's amended Schedule A/B filed in the meantime showed why: Debtor owned a nonexempt one-half interest in a lake cabin in Cable, Wisconsin. The cabin, of unknown value, had not been disclosed in Debtor's original Schedule A/B. Shortly after disclosing her interest in the cabin, Debtor received her discharge.

Creditor, acting pro se, timely filed a proof of claim (POC 7-1). Creditor's claim form did not list an amount, but the handwritten itemization and other documentation showed that Creditor believed he was owed a "minimum of $59,767.14." This amount was comprised of reimbursements for property allegedly purchased on Debtor's behalf: $15,000 for a car, $2,100 for appliances, and $11,900 for a shed, plus other amounts for reimbursement of funds: $10,000 of proceeds from an insurance check, $13,690 in charges on his credit cards, and $7,077.08 in funds withdrawn from his I.R.A. The documentation attached to the proof of claim, albeit haphazardly compiled and incomplete, included some photos of the property purchased, copies of some statements and the insurance check, with handwritten notes of explanation. Several months later, Creditor – again acting pro se – amended the claim (POC 7-2) to include the amount of $59,767.14 on line 7 of the proof of claim form.

Debtor filed objections to both POC 7-1 and 7-2, after the chapter 7 trustee allegedly declined to object. Debtor's verified statement in support of her objections denied that Debtor owed Creditor anything and asserted the facts were actually the other way around: Creditor had moved into Debtor's Minnesota home in 2011 and during their period of cohabitation, he had failed to pay his share of their living expenses or to reimburse her for purchases they made, despite repeated promises.[1] In addition to this alleged financial abuse, Debtor contended that Creditor had abused her psychologically, emotionally, and physically. Debtor attached as evidence a state court order she described as a "domestic abuse no contact order" (known in Minnesota state courts as a "DANCO"), allegedly arising from Creditor's arrest for domestic assault and damage to property in 2014. Debtor asserted that Creditor had convinced her to dismiss the 2014 DANCO and they had resumed cohabitating but that she later sought an order for protection against him in 2019, also attaching that 2019 Order.

---

[1]Debtor did not schedule on her Schedule A/B any claims for reimbursement from Creditor.

Creditor then obtained a lawyer to respond to the claim objections, and the response escalated the finger-pointing. Creditor denied he had domestically abused Debtor and denied that any court had found him to have committed domestic abuse. Creditor alleged that Debtor had misrepresented the nature of the two state court orders: the 2014 Order was not a "DANCO" but merely an NCO, or "No Contact Order," reflective of the fact that the charges listed on the order were only damages to property, not assault, and that the NCO continued to allow Creditor limited contact with Debtor. The word "DANCO" was in fact crossed out and "NCO" written in. As for the 2019 Order, it was Creditor, he contended, who had sought assistance from the police, after he decided to end the relationship, which the parties agreed did end sometime around October 2019.

The 2019 Order, Creditor pointed out, did not find that any domestic abuse had occurred but stated only that Creditor appeared and "does not object to an Order for Protection and understands that the order will be enforced as if there was an admission or finding of domestic abuse," and otherwise set out conditions for Creditor to remove his belongings from Debtor's house. Although admitting that the relationship had been "fraught," Creditor stated he had "never struck or otherwise abused the debtor; this is a claim that the debtor cannot truthfully make." Rather, Debtor was the one with an (alleged) lengthy criminal history. Debtor's protestation that she inadvertently and innocently failed to list her half interest in a cabin believed to be worth $500,000 was not credible, according to Creditor. And the chapter 7 trustee, normally the one with standing and the duty to object to invalid claims, had declined to object to Creditor's claims.

The transcript of the bankruptcy court's first telephonic hearing on the claim objections is not in the record on appeal. The record on appeal otherwise reflects, however, that the bankruptcy court directed Debtor to file amended schedules to establish her standing to object to the claims.[2] Debtor then filed an amended

_____

[2]The other timely filed proofs of claim at the time totaled approximately $31,000. *See In re Robb*, 534 B.R. 354, 357 (B.A.P. 8th Cir. 2015) (chapter 7 debtors typically have no standing to object to claims because they do not have a pecuniary

Schedule A/B, valuing her half-interest in the cabin at $235,300. Around the same time, Creditor, again through counsel, filed an amended claim (POC 7-3), in the slightly decreased amount of $57,108.49, apparently also to address certain concerns the bankruptcy court had raised about the validity of the claims based on Minnesota's so-called "anti-palimony" laws[3] and the Minnesota statute of limitations. Of significance, the verified memorandum attached to POC 7-3 described Creditor's claims against Debtor as sounding in tort claims for conversion or unjust enrichment, not contract claims subject to the anti-palimony statutes.

At the next telephonic hearing, a transcript of which is also not in the record, the bankruptcy court heard oral argument and disallowed Creditor's claims for the car, appliances, and shed, but ordered the parties to mediate before another bankruptcy judge the remaining $17,562.46 in claims related to the insurance check, credit card charges, and IRA distributions.[4] Before that judge could conduct the mediation, however, the parties reached a settlement on their own. Through emails and discussion between their respective counsel, the parties apparently agreed that if Creditor filed an amended claim for $9,000, Debtor would withdraw her objections to POC 7-1 and 7-2 and not object to the amended claim. Creditor through counsel then filed an amended claim for $9,000 (POC 7-4). The next day, Debtor withdrew her pending claims objections. The parties did not enter into a formal settlement agreement and did not ask the bankruptcy court to approve the settlement or otherwise to enter any order regarding the allowance of POC 7-4.

---

interest in the distribution of assets of the estate, in the absence of a potential surplus).

[3]Minn. Stat. § 513.075 (2024) (rendering unenforceable any contract concerning property or financial relations between unmarried, cohabitating parties who contemplate sexual relations unless the contract is signed and in writing and is sought to be enforced after termination of the relationship); Minn. Stat. § 513.076 (2024) (barring courts from having jurisdiction to hear such claims by such parties unless they have a written, signed contract).

[4]Since there is no transcript of the hearing, it is not clear how these claims were reduced from their original claimed amounts.

This "settlement" did not end the parties' dispute, however. The day after Debtor withdrew her claim objections, Creditor through counsel filed a new claim (POC 11-1) for $400,000 for "personal injury." POC 11-1 was supported by a five-count draft complaint seeking damages for assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and domestic abuse.

The unsigned and undated draft complaint, captioned in the U.S. District Court for the District of Minnesota, alleged that the district court had jurisdiction under 28 U.S.C. § 157(b)(2)(B) and that the proceeding was "non-core." The complaint also requested a jury trial. Creditor's allegations applicable to all counts alleged that Debtor had regularly subjected Creditor to "verbal abuse, emotional abuse, assault, battery, and domestic abuse," through various actions: using profanity when speaking to him; regularly pulling his hair and striking him both with open hands and closed fists, often while he was sleeping; once striking him with what he believed was a shoe while he was sleeping; giving him a black eye; wielding a knife at him in a threatening manner; and once sexually assaulting him. These actions, Creditor alleged, had caused him "severe emotional distress," requiring "almost weekly professional care for over three years for several diagnosed mental health conditions." In addition, the complaint alleged that Debtor's conduct had also caused Creditor to suffer "physical manifestations of fatigue, panic attacks, suicidal ideation, nightmares and other sleep disorders, and stomach and other somatic pain."

Unsurprisingly, Debtor objected to POC 11-1, raising several objections. Debtor again denied that she had abused Creditor and reiterated her assertion that she had endured years of abuse from Creditor. Debtor asserted the claim was untimely since it was filed after multiple claims amendments and more than seven months after the Bar Date. Debtor accused Creditor of "attempting to circumvent the discharge injunction by way of creating a claim out of whole cloth and then basing that claim on a non-existent lawsuit that is barred by the discharge injunction." Even if not deemed time-barred, Debtor argued, her denial of the abuse plus the lack of any Creditor evidence to support POC 11-1 overcame any presumption that the claim

was valid.[5] Debtor also asserted that the claim should be denied under the affirmative state law defenses of the statute of limitations, estoppel, and laches. Debtor did not argue that POC 11-1 was barred by the previous settlement.[6]

Creditor's response relied primarily on an argument that the bankruptcy court lacked jurisdiction to hear and determine Creditor's unliquidated personal injury tort claim pursuant to 28 U.S.C. § 157(b)(5). Addressing the affirmative defenses, Creditor denied that he was seeking damages for actions beyond the statute of limitations. Creditor pointed out that although POC 11-1 was filed after the Bar Date, it was still allowed as a tardily filed claim, payable after timely filed claims.[7] Creditor also disputed that laches and estoppel would apply, noting that estoppel does not prevent the filing of a new claim on a new theory, and that laches requires unreasonable delay and prejudice and does not apply when there is an express statute of limitations, citing Minnesota law.

The bankruptcy court held two additional telephonic hearings, taking the matter under advisement. The court later issued a written opinion.[8] The bankruptcy court sustained Debtor's objection and disallowed POC 11-1. Again, there are no transcripts of those hearings in the record.

In its written opinion, the bankruptcy court began by addressing its jurisdiction and the scope of its authority to hear and determine and to issue final orders in "core proceedings," as set out in 28 U.S.C. § 157. With respect to claim objections specifically, subsection 157(b)(2)(B) provides in pertinent part that core proceedings include, but are not limited to, "allowance or disallowance of claims

---

[5]*See* Fed. R. Bankr. P. 3001(f) ("A proof of claim signed and filed in accordance with these rules is prima facie evidence of the claim's validity and amount").

[6]At oral argument, counsel for the parties disagreed that the settlement was intended to be global. As that issue is not before us, we do not weigh in on the dispute.

[7]11 U.S.C. § 726(a)(3).

[8]*In re Smith*, 665 B.R. 807 (Bankr. D. Minn. 2024).

against the estate . . . *but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims* against the estate for purposes of distribution in a case under title 11 (emphasis added)." Subsection 157(b)(5) in turn provides that *"[t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court* in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending (emphasis added)."[9]

The bankruptcy court then observed that the bankruptcy code does not define the term "personal injury tort" as used in 28 U.S.C. § 157. The court correctly noted that the U.S. Supreme Court had acknowledged there was no consensus on the interpretation of the phrase "personal injury tort" and had declined to provide a definition.[10] Likewise, the Eighth Circuit had not decided the issue. Neither party had briefed which test the bankruptcy court should apply.

Nonetheless, the bankruptcy court decided to follow those courts that construe "personal injury tort" narrowly, excluding from the bankruptcy court's purview only those personal injury torts resulting in bodily injury.[11] In adopting the narrow test, the court said, it had to consider the coupling of "personal injury torts" with "wrongful death claims" in § 157. Subsection 157(b)(2) carves out an exception for only these two types of claims, the court reasoned; if Congress had intended that

---

[9]28 U.S.C. § 1411(a), governing jury trials, and with an exception not applicable here, states that "this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law *with regard to a personal injury or wrongful death tort claim* (emphasis added)."

[10]*Stern v. Marshall*, 564 U.S. 462, 479 n.4 (2011).

[11]Citing *In re Gawker Media LLC*, 571 B.R. 612, 620 (Bankr. S.D.N.Y. 2017); *In re Byrnes*, 638 B.R. 821, 829 (Bankr. D. N.M. 2022); *In re Interco, Inc.*, 135 B.R. 359, 362 (Bankr. E.D. Mo. 1991); *In re Residential Cap., LLC,* 536 B.R. 566, 571 (Bankr. S.D.N.Y. 2015); *In re Grimes*, 388 B.R. 195, 197 (Bankr. N.D.W. Va. 2008); *In re Atron Inc. of Mich.*, 172 B.R. 541, 544 (Bankr. W.D. Mich. 1994) (all adopting the narrow view).

non-traditional torts for any injury from the invasion of personal or civil rights as those courts adopting the broad approach advocated,[12] then it would have written "all torts."

As written, the court said, § 157(b)(2) "preserves the traditional role of bankruptcy courts in the claims allowance process and only a limited subset of claims must be transferred from the bankruptcy court to the district court for review." With this conclusion, the bankruptcy court also implicitly rejected the third test – the so-called hybrid, middle ground, or intermediate approach – in which courts may recognize as a tort claim a nontraditional tort claim for emotional distress or reputational damage, but also retain jurisdiction if the claim involves financial, business, or property aspects.[13]

Characterizing Creditor's claim as one for injuries from a "mental health condition," the bankruptcy court held that POC 11-1 did not involve an "unliquidated personal injury tort." The bankruptcy court – and not the district court – therefore had both the jurisdiction and authority to hear and determine the allowance of Creditor's claim.

Turning to the affirmative defenses, the court first rejected Debtor's argument that POC 11-1 was time-barred, correctly noting that late-filed claims are treated as tardily filed under 11 U.S.C. § 726(a)(2)(c)(ii) if filed in time to permit payment of the claim, and that to the extent Creditor's injuries occurred after December 20, 2016 (six years before the bankruptcy was filed), the claim would not be barred by the Minnesota statute of limitations applicable to such claims. The court also agreed with Creditor that the equitable remedy of laches did not apply, given that the bankruptcy code and rules established a deadline for the filing of tardy claims.[14]

---

[12]*E.g., In re White*, 410 B.R. 195, 203 (Bankr. W.D. Va. 2008).

[13]*E.g., In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 160-61 (Bankr. D. Conn. 2002).

[14]Citing *In re Racings Services*, 619 B.R. 681, 687-88 (B.A.P. 8th Cir. 2020) (rejecting the doctrine of laches to disallow a tardily filed claims); *Law v. Siegel*, 571

The bankruptcy court stating it agreed, however, "with the essence" of Debtor's estoppel affirmative defense and held that POC 11-1 should be disallowed for two additional reasons: res judicata and judicial estoppel. With respect to the application of res judicata, the bankruptcy court said that POC 7-4 was "deemed allowed" under 11 U.S.C. § 502(a) and was thus the equivalent of a "final judgment." Creditor, according to the bankruptcy court, had a full and fair opportunity to litigate POC 7, and had amended the claim three times. POC 11-1 was based on the same allegations of abusive and controlling conduct between the same parties during the same period. The doctrine of res judicata – preventing parties from relitigating claims on different theories for the same transaction or series of transactions – thus barred Creditor from relitigating his claim for injuries sounding in tort.[15]

Turning to judicial estoppel, the bankruptcy court described it is an equitable doctrine preventing a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.[16] Its purpose

_____

U.S. 415, 421 (2014) (bankruptcy court could not use an equitable remedy in express violation of a provision of the bankruptcy code).

[15]Citing *Plough By & Through Plough v. W. Des Moines Cmty. Sch. Dist.*, 70 F.3d 512, 516 (8th Cir. 1995) (applying Iowa's the doctrine of res judicata under Iowa). Res judicata as recognized by the Eighth Circuit in bankruptcy cases can take one of two forms, claim preclusion or issue preclusion. Claim preclusion bars relitigation of the same claim between parties or their privies where a final judgment has been rendered upon the merits by a court of competent jurisdiction. *In re AFY, Inc.*, 571 B.R. 825, 837 (B.A.P. 8th Cir. 2017). Issue preclusion, also known as collateral estoppel, applies where (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issued involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment. *Id.* at 837 (citations omitted). The only order entered by the bankruptcy court regarding claims 7-1 and 7-2 was not a final order since it referred the parties to mediation.

[16]Citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

-10-

is to protect the integrity of the courts.[17] The bankruptcy court reasoned that Creditor's depiction as a victim of abuse was "clearly inconsistent" when "in fact he has admitted the opposite over a period of many years." The court cited to the 2014 state court proceeding, which the court described as having a DANCO entered against Creditor.

Pointing to the 2019 proceeding, the bankruptcy court said that order including an "admission and finding" that Creditor had committed domestic violence against Debtor. The court also took judicial notice of a 2021 state court proceeding not previously referenced in the proceedings in which Creditor pled guilty to domestic violence and another DANCO was entered. "Creditor invoked the exception for 'personal injury torts' at a late stage in the case, to 'sandbag' the bankruptcy proceeding and gain a tactical advantage over his opponent," to Debtor's prejudice, the court found. "It is plainly evident," said the court, that Creditor "is using this bankruptcy proceeding to rehash his personal history with the Debtor."

Creditor filed a timely notice of appeal.

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*.[18] A bankruptcy court's application of the legal principle

---

[17]*Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1049 (8th Cir. 2006). In deciding whether judicial estoppel is appropriate, court considers three non-exhaustive factors: (1) whether the party's later position is clearly inconsistent with its prior position; (2) whether a court was persuaded to accept a prior position so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and (3) whether the party claiming inconsistent positions would derive an unfair advantage or impose an unfair detriment on the opposing party if not stopped. *Combs v. The Cordish Companies, Inc.*, 862 F.3d 671, 678 (8th Cir. 2017).

[18]*In re LaMonda*, 656 B.R. 494, 497 (B.A.P. 8th Cir. 2024) (citing *Ridings v. Casamatta (In re Allen)*, 628 B.R. 641, 642 (B.A.P. 8th Cir. 2021) (citing *Brown v. Luker (In re Zepecki)*, 277 F.3d 1041, 1045 (8th Cir. 2002)).

of res judicata is reviewed *de novo* and the application of judicial estoppel is reviewed for abuse of discretion.[19] A court abuses its discretion if the order is based on "clearly erroneous factual findings or on erroneous legal conclusions."[20]

## DISCUSSION

Creditor raises numerous issues on appeal. He takes umbrage at what he describes as the bankruptcy court's inaccurate descriptions of the 2014 and 2019 state court orders and the bankruptcy court's finding that Debtor – and not Creditor – was the victim in the relationship. Creditor describes as clear error the bankruptcy court's application of the doctrines of res judicata and judicial estoppel to disallow POC 11-1 – arguments, he points out, that Debtor did not raise below. Creditor defends his action in filing POC 11-1 as a new claim. And he argues that the bankruptcy court lacked jurisdiction to hear and determine POC 11-1, rejecting the bankruptcy court's characterization of POC 11-1 as merely a claim for a mental health condition.

Creditor's arguments on appeal are not without merit. Addressing the application of res judicata first, it is clear that bankruptcy courts may raise res judicata sua sponte, although courts are advised to be "cautious" in doing so.[21] Creditor is correct that Debtor did not raise res judicata in her objection to POC 11-1 and that res judicata is a legal doctrine distinct from the equitable doctrine of estoppel, which would have required an evidentiary hearing to determine the facts.[22]

---

[19]*In re Ginter*, 349 B.R. 193, 196 (B.A.P. 8th Cir. 2006).

[20]G*ess v. Randolph Brooks Fed. Credit Union (In re Gess)*, 526 B.R. 798, 800 (B.A.P. 8th Cir. 2015).

[21]*Ginter*, 349 B.R. at 197 (a court may raise the issue of res judicata sua sponte if it is on notice that it has previously decided the underlying substantive issue in the dispute, but where no judicial resources have been spent on resolution of a question, a court must be cautious about raising a preclusion bar sua sponte).

[22]Debtor's estoppel argument was that even if she were indebted to Creditor in some amount, he should be equitably estopped from making a claim based on his

-12-

Although some courts have held that a filed proof of claim is the equivalent of a final judgment, the Eighth Circuit has not addressed the issue and other courts have found reasons to reject those courts' reasoning.[23] As the Eighth Circuit has noted, claims preclusion issues such as res judicata are not "easy."[24] The Eighth Circuit has previously declined to affirm on an alternative ground of claim preclusion when the issue was difficult and the lower court did not address it.[25]

Here, the bankruptcy court conflated the equitable defense of estoppel with the common law doctrine of res judicata. The court raised and applied the doctrine

_____

"repeated assurances" that he would compensate her for his failure to contribute to the household expenses.

[23]The leading case is *Seigel v. Federal Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir. 1998), which held that res judicata barred a debtor in bankruptcy from suing a creditor who had foreclosed against debtor's properties for tort and other claims arising out of the foreclosure, reasoning that creditor's filed proof of claim in debtor's bankruptcy case was the equivalent of a final judgment. Although no party had objected to creditor's claim during the bankruptcy proceeding, the Ninth Circuit reasoned that the lack of a separate order was "a distinction without a difference," noting that the claim was "deemed allowed" under 11 U.S.C. § 502(a). *Id.* at 530. "What else can 'deemed allowed' mean," said the court, besides deeming that the bankruptcy court has acted on the claim and ordered allowance of the claim? *Id. But see Cnty. Fuel Co., Inc., v. Equitable Bank Corp.*, 832 F.2d 290, 292 (4th Cir. 1987) (considering the analysis "doubtful"). The *Seigel* court, like the bankruptcy court here, in turn relied on cases citing *Katchen v. Landy*, 382 U.S. 323, 324 (1966), which stated that "a creditor who offers a proof of claim and demands its allowance is bound by what is judicially determined." *Katchen* was decided under the Bankruptcy Act, however, which also provided that claims were "deemed allowed" but employed a separate process for "proving" the claim, which the current bankruptcy code eradicated. 2 COLLIER ON BANKRUPTCY, ¶ 502.LH[I][b][1] (Richard Levin & Henry J. Sommer eds., 16th Ed.) *Siegel* also did not address other arguments, including that claims that have been allowed or disallowed may be reconsidered for cause (11 U.S.C. § 502(j); Fed. R. Bankr. P. 3008); that debtors may not have standing to object to filed proofs of claim and that trustees will not object if there are no assets to distribute; or that the evidentiary effect of a proof of claim is that it is presumed valid, but the presumption is rebuttable. Fed. R. Bankr. P. 3001(f).

[24]*In re Spencer*, 868 F.3d 748, 752 (8th Cir. 2017).
[25]*In re Buchanan*, 31 F.4th 1091, 1096 (8th Cir. 2022).

-13-

sua sponte and dispositively, without the parties having briefed it, against a factual background that was not "easy" and on which no evidence was heard.[26] Doing so is troublesome, as is the taking of judicial notice[27] of a domestic abuse violation in 2021, after the termination of the parties' relationship, to buttress a finding that Creditor should be judicially estopped from filing another proof of claim.[28] Also troublesome, however, is the fact that, as the bankruptcy court observed, Creditor waited to file POC 11-1 until just days after the purported settlement. Creditor's counsel argued that Creditor had insufficient information or knowledge to file a tort claim earlier in the case. But recall that, in Creditor's original responses to Debtor's claim objection, Creditor actually argued that his claims for damages in POC 7-1 and 7-2 were in fact tort and not contract claims and indirectly accused Debtor of abusing him, in an attempt to defeat the anti-palimony defenses.[29]

---

[26]This court has held that a bankruptcy court should hear evidence when there is a disputed issue of fact. *In re Schiller*, 629 B.R. 54, 58 (B.A.P. 8th Cir. 2021).

[27]Fed. R. Evid. 201 provides that the court may take judicial notice on its own, but a party has the right to be heard upon request if the court takes judicial notice before notifying the party.

[28]The Eighth Circuit has cautioned that the courts should only apply the doctrine as an extraordinary remedy when a party's inconsistent behavior will result in a miscarriage of justice. *Stallings v. Hussmann Corp.*, 447 F.3d at 1049. If Creditor has a valid claim, it is not clear how Debtor is prejudiced by having that claim allowed, as would be required for the judicial estoppel doctrine to apply. A debtor has no "right" to keep nonexempt assets over the valid claims of her creditors.

[29]This court is aware that some courts have applied Fed. R. Civ. P. 15(c), as made applicable by Fed. R. Bankr. P. 7015, to proof of claim amendments, to determine whether amended claims should be considered timely for purposes of the "bar date." *E.g., In re Jackson*, 541 B.R. 887, 891 (B.A.P. 9th Cir. 2015). Rule 15(c) provides that an amendment to a pleading relates back to the date of the original pleading when, among other reasons, the amendment asserts a claim or defense "that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out— in the original pleading." In this appeal, Creditor concedes that POC 11-1 does not "relate back" such that it should be deemed timely filed. This court expresses no opinion on whether Rule 7015 applies or whether the claim arises "out of the conduct, transaction, or occurrence set out." It adds to the difficulty of applying claim preclusion without evidence, argument, or briefing, however, when the court found that POC 7-4 arose out of the same conduct as POC 7-1 and 7-2 as necessary

But this court need not reach these "difficult" issues based on this record. On its face, POC 11-1 stated claims for physical injury and trauma arising from assault and battery. Even under the "narrowest" test for determining whether a claim is for a "personal injury tort," assault and battery clearly constitute personal injury torts.[30] The bankruptcy court's characterization of POC 11-1 as merely a claim for damages for a "mental health condition" was an error of law based on *de novo* review and must be reversed.

This does not end the inquiry, however. The bankruptcy court has jurisdiction as established by 28 U.S.C. § 1334(b) over the claims allowance process, even though the liquidation of a personal injury tort claim for purposes of distribution in a bankruptcy case is unquestionably not a core proceeding under 28 U.S.C. § 157(b)(2)(B). And as stated at the beginning, the district court is required to try personal injury claims and jury trial rights are preserved. That being said, courts are split on whether it is only the trial itself that must take place before the district court or whether the bankruptcy judge, acting on pretrial matters, has the power to enter dispositive rulings. And, if so, whether the bankruptcy court's authority is limited to ruling on bankruptcy-related defenses (e.g., the timeliness of the filing of the claim) – as opposed to nonbankruptcy law defenses (e.g., a state law statute of limitations).[31] Courts are also split on whether, if a matter must be tried in the district court, whether it is the bankruptcy court or the parties that move to request the bankruptcy court to withdraw the reference. Jury trial "rights" – as is a "right" to have a district court judge hear a non-core matter – are rights that can be waived.

At oral argument, it was unclear how Creditor contemplated that his draft, unsigned complaint would procedurally be brought before the district court. Some

---

to apply res judicata to disallow the claim, but also to find the claim was tardily filed and thus did not relate back.

[30]This court does not opine on whether the draft complaint states plausible claims for relief as required under Fed. R. Civ. P. 12(b)(6).

[31]*See generally* 2 COLLIER ON BANKRUPTCY ¶ 3.06[I] (Richard Levin & Henry J. Sommer, eds., 16th Ed.)

courts have local rules governing such procedures, but we are unaware of the procedure in the District of Minnesota, and the Eighth Circuit has not addressed these issues or the concomitant procedures, either.

The bottom line is that, given that the bankruptcy court erred in the first instance in holding that Creditor's claim was not a "personal injury tort" claim, these other issues, arguments, defenses, and procedures that arose before the bankruptcy court and now arise before this court should in the first instance be fully developed with briefing, argument, and evidence as needed before the bankruptcy court so that the bankruptcy court as well as the parties have a full and fair opportunity to determine how and in which forum Creditor's unliquidated personal injury tort claim should (or should not) be liquidated for purposes of distribution of the bankruptcy estate and whether any defenses apply to disallow the claim.

## CONCLUSION

Because the bankruptcy court erred in determining that POC 11-1 was not a "personal injury tort" claim, we reverse and remand for further proceedings consistent with this opinion.

_____